## BROWN v. STATE ELECTION BOARD et al. (FOLEY, Intervener).

No. 32615. May 23, 1946.

*170 P. 2d 200.*

---

Haskell Paul, of Pauls Valley, and William M. Franklin, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

Creekmore Wallace, Don Anderson, and B. E. Harkey, all of Oklahoma City, for intervener.

HURST, V.C.J. This is an original proceeding in mandamus commenced by Easter Brown to compel the respondents, members of the State Election Board, to place his name on the ballot as a candidate for the Democratic nomination for the House of Representatives from District No. 2 of Garvin county, at the July, 1946, primary election.

Petitioner alleges that prior to his induction into the Army of the United States he was a registered Democratic voter in Kentucky, where he voted the Democratic ticket in 1941 and also while he was in the military service, and that upon his discharge from the Army in March, 1945, he established his residence in said representative district in Garvin county, and that he has continuously resided in the same voting precinct since that time; that, by reason of specific provisions of law, he has not had an opportunity to register as a voter since residing in said precinct, but that he intends to register as a Democrat in said precinct at the first opportunity authorized and provided by law; that in due time he filed with the respondents his notification and declaration of his candidacy for the Democratic nomination for the House of Representatives from said district at the July, 1946, primary election; that said notification and declaration was in due form, but that he inadvertently stated therein that he was a registered voter in the precinct of his residence, but that when the protest petition against his candidacy was filed, he corrected said error by reciting the true facts. The respondents struck his filing for the sole reason that he was not a registered voter in said representative district. Respondents appeared by the Attorney General and contend that their order is in accordance with the law. E. W. Foley, a candidate for said legislative office, intervened herein, and contends that the respondents acted properly in sustaining his protest petition against petitioner's filing and in striking the same.

There is no dispute as to the facts alleged. The only question presented is whether a person, who is otherwise qualified to be a candidate for office, may become a candidate despite the fact that he is not a registered voter in the precinct of his residence, where he has become a qualified elector since the close of the last registration period, and where, under the law, it has been and will be impossible for him to register until a fixed time after he must file his notification and declaration of candidacy, as provided in 26 O.S. 1941 § 79.

Section 1, art. 3, of the State Constitution defines "qualified electors" as citizens of the United States and of this state "who are over the age of twenty-one years and who have resided in the State one year, in the county six months, and in the election precinct thirty days next preceding the election at which such elector offers to vote," with certain exceptions not here material.

Section 17, art. 5, of the State Constitution prescribes the qualifications of members of the House of Representatives as persons who are "twenty-one years of age at the time of their election," and it then provides as to both Senate and House members: "They shall be qualified electors in their respective counties or districts and shall reside in their respective counties or districts during their term of office."

Section 5, art. 3, of the State Constitution provides:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for State, District, County, and municipal officers, for all political parties, including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any non-partisan candidate."

Section 6, art. 3, of the State Constitution provides:

"In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot; and may, when necessary, provide by law for the registration of electors throughout the State, or in any incorporated city or town thereof, and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

We have no statute expressly providing that a candidate for a party nomination must be registered as a voter in the party. The only statute that may be construed to make such a requirement is 26 O.S. 1941 §§ 161, 162, providing the form for notification and declaration of candidacy, which contains the recital that the candidate is a "registered ——(party) voter" in his precinct, and that the provisions of section 162 must be fully complied with.

Assuming, without discussing or de-

ciding, that the Legislature may ordinarily require a person to be registered as a voter in his political party before he may become a candidate for nomination in the party primary, the question here is whether it intended to prevent a person, otherwise qualified, from becoming a candidate for lack of registration where such person has not been afforded an opportunity to register.

There is grave doubt as to whether the power of the Legislature to "make all such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot," as provided in section 6, art. 3, of the State Constitution, includes the power to make a regulation that, for legal impossibility to comply therewith, would prevent a qualified elector, as defined in section 1, art. 3, of the Constitution, who possesses the qualifications prescribed by section 17, art. 5, of the Constitution, from becoming a candidate. The rule is that "a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubt upon that score." 11 Am. Jur. 730.

Another rule of construction is that where a statute is ambiguous or the literal meaning would lead to absurd consequences which the Legislature probably did not contemplate, the courts must presume that such consequences were not intended and should adopt a construction that is reasonable and that will avoid the absurdity. Taylor v. Langley, 188 Okla. 646, 112 P. 2d 411; West's Okla. Digest, Statutes §181 (2); 50 Am. Jur. 372, § 368.

We think it would be unreasonable and absurd to say that the Legislature intended to prevent a person possessing all the constitutional qualifications from becoming a candidate simply because he is not registered, where the law has not afforded him an opportunity to register after he became qualified to do so, either by attaining his majority or by becoming a citizen of the

state, county and precinct since the close of the last registration period.

Foley relies upon Darst v. Election Board of Craig County, 194 Okla. 469, 152 P. 2d 912, Swindall v. State Election Board, 168 Okla. 97, 32 P. 2d 691, and Love v. State Election Board, 197 Okla. 157, 170 P. 2d 193. These cases do not sustain his contention. The Darst Case stands for the rule that a person, while registered as a voter in one party, may not deny his party affiliation and become a candidate in another party primary. The Swindall Case stands for the rule that a portion of the notification and declaration required by 26 O.S. 1941 § 162 does not operate as a test of the qualifications of the candidate, but is for the information of the voters, and that the right of the Legislature to regulate primary elections does not include the right to deprive citizens of their constitutional rights. The Love Case stands for the rule that the Legislature evinced an intention that persons relieved of the requirement of registration while in the armed service need not be registered either to vote or become candidates.

In view of the rules of statutory construction, above stated, we are of the opinion, and hold, that the Legislature did not intend to prevent a person possessing the qualifications prescribed by the Constitution for office from becoming such a candidate in a primary election simply because he is not registered, when he has been afforded no opportunity by statute to register prior to filing his notification and declaration of candidacy and since he became eligible to register and vote.

Writ granted.

GIBSON, C.J., and OSBORN, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur. RILEY, J., concurs specially. CORN, J., concurs in result.

———

RILEY, J. (concurring specially). Oklahoma and Indian Territories were joined in single and inseparable union in the year 1907 and admitted as the forty-sixth state of the United States of America.

The people, by their Constitution adopted, submitted to them by the Convention and ratified by them at an election held for the purpose, manifested a purpose contained in the text of the document to *"Let The People Rule,"* and this is a principle inherent in the right of self-government. Dove v. Oglesby, 114 Okla. 144, 244 P. 798.

Broad suffrage is extended to the people by the constitutional provision; permissive authority is granted to the Legislature to require, as a condition of voting, the registration of each qualified elector. By statutory act, such a registration has been required with the exceptions extended to such qualified electors as may be serving in the armed forces of the United States. Indubitably, the public purpose was to preserve the purity of the ballot and to prevent fraud in elections. These statutory regulations, as conditions of voting and the exceptions with extensions under equitable consideration, have been sustained. In re Initiative Petition No. 142, 176 Okla. 155, 55 P. 2d 455; Love v. State Election Board, 197 Okla. 157, 170 P. 2d 193, decided May 17, 1946. The result is that ordinarily and save and except for the exceptions by statute provided, for the purpose of voting, a qualified elector in Oklahoma is a *registered* elector.

This special proceeding, considered in the exercise of *original jurisdiction,* by the Constitution vested in the Supreme Court (sec. 2, art. 7, Const.), involves the issue whether such registration is or may be, by statute, made or imposed as a *requirement* to be administered by the State Election Board to test the right of a constitutionally qualified elector to file, within the time and as provided by statute, as a candidate for nomination and election to public office in Oklahoma and to become the nominee of a political party with which

such elector is affiliated in this or another state.

A mandatory primary system for political party nomination and elections to public offices is contemplated and required by the Constitution of this state, and the Legislature is, by the constitutional provision, *directed* to "enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal offices for all political parties, including United States Senator" (sec. 5, art. 3, Const.), and this duty to provide such a mandatory primary system has been performed by the Legislature by the enactment of suitable statutes, and they have been sustained. By provision of statute, 26 O.S. 1941 § 162, within a specified period of time *an elector*, who is a candidate for party nomination and election to public office "who is affiliated with a legally recognized party at whose hands he seeks the nomination, *shall* have his name printed on the official ballot of his party for an office to which he is eligible, in any primary election, *upon the filing* with the proper officer, within the time provided by law, a notification and declaration of candidacy." A form is provided for that purpose. The statute has been held to be *informative* and *directory* only, and not to provide *a test* for such candidacy. Swindall v. State Election Board, 168 Okla. 97, 32 P. 2d 691.

However, section 161, Id., is mandatory in its nature. It provides:

"No person shall be allowed to become a candidate in any general election unless he shall have complied fully and completely, with the provisions of this chapter"

which is incorporated in this title. Craig v. Bond, 160 Okla. 34, 15 P. 2d 1014; Dancy v. Peebly, 132 Okla. 84, 270 P. 311. However, it is not competent within the public policy denoted by the Constitution for the board, in its administration, to so require the registra-

tion, for, by the Constitution the authority of the Legislature as to such matters governing such election is to provide regulatory measures only, whereas that which is by the board administered as a requirement limits the elective franchise and restricts the right of suffrage and the right to hold public office to those within a class not sanctioned by the Constitution and public policy. By constitutional provision, qualifications for each and every state office are specifically provided, and therefore the constitutional provisions are exclusive and not amendable by legislative act. The administrative denial and restriction of the purpose of such constitutional provisions are not according to the evidenced public policy and purpose.

So, we must determine whether an elector's right of candidacy is or may be unreasonably restricted by administration and application of an interpretation of statutory law. That right may not be so restricted.

An affiliational requirement with a political party is a reasonable requirement and it should be sustained. A registration of one who is entitled to register as a qualified elector within the time to vote for a state officer to represent the elector is not an unreasonable restriction. "The right to run" is the matter before the court. Such an elector as petitioner has right of representation by another and to vote, if he registers, for the other of his choice. He seeks now to be a candidate for the office himself, to represent himself and the people. That which one may do through another, he may do himself, is the general rule to govern action of one who would represent himself, pro se, as well as the class he may represent.

The form statute requires such a candidate to cause to be filed with the State Election Board a verified notification and declaration and to cause to be filled in a form statutorily provided, wherein a statement is, by inference, required

174

to be made by the candidate that the candidate is registered as an elector in the precinct of his residence. The requirement is held to be directory only and to exist as an informative, regulatory provision of statutory form in the law.

Substance is the thing that governs the public policy. The constitutional provision states the substance of the policy.

**On April 22, 1917,** the Congress of the United States declared a state of war to exist between the Allied Powers and the governments of Central Europe. In the same month and year, a boy was born in the State of Kentucky. He was christened "Easter," reminiscent of the resurrection of the Life. His surname was Brown, a name well known to the people of the deep South. Kentuckians are famous for belles, English breakfast steaks, and bourbon whisky. A United States Senator, of Missouri, a distinguished native Kentuckian, so said. He added a dog to the breakfast circle to eat the steak, but a Filippino lady, who understood English well, said the Filippinos did not eat dog, and the Senator was forced to admit the dog was not a regular diet of Kentuckians. The Senator, like Easter Brown, took up his residence in a foreign state, exercised his right of franchise, ran for office, and became a statesman.

Easter Brown is the petitioner before the court. He seeks a writ of mandamus to enforce his legal right as an elector in the State of Oklahoma, his state by choice and adoption. Easter Brown grew to young manhood in Kentucky, but looked to the future. He registered as a Democrat and exercised his right of franchise in Kentucky and abroad.

The calamities of war again engulfed the world. Easter became an infantryman in the armed forces of his country. He served and voted at home and abroad. While in the South Pacific, where for three years and more he, in uniform, served democracy, he also served the Democratic party by the exercise of his franchise on a war ballot.

Victory crowned the general endeavor, political and governmental, in war and peace, in which Easter and others were engaged. He, with them, achieved the victory and they, or some of them, returned to these shores. Easter is a battle-scarred veteran, but, instead of making his home in his native State of Kentucky, subjecting himself to such influences as there exist—as depicted in the song "My Old Kentucky Home," stories told of Uncle Remus, and the like—at his own request, he was transferred to this service command and stationed at Fort Sill. There, in March, 1945, he was discharged from the armed forces to enlist in an ever-enduring matrimony with a miss in Oklahoma. For that purpose, he secured a certificate. Likewise, the petitioner determined upon citizenship in this land of opportunity, by *overt act* through the agency of his bride-to-be, a Miss Margaret Winans of Pauls Valley, selected his place of residence in the precinct, county, and nation, as stated, of his own free will and choice.

Apparently cognizant of constitutional provision and rule of law that no member of the Army or Navy of the United States shall gain or lose a residence in this state by reason of *his service* in this state or absence from this state *in the military or naval service* of the United States (sec. 2, art. 3, Const.), Easter Brown, during his military service and subsequent to it, and in addition to that service, within this state committed overt acts by which his citizenship in Oklahoma was established. Such acts have been recited; they work no hardship on any one, not even Kentuckians. It is admitted in the case at bar that petitioner is now in this state possessed of the constitutional qualifications of an elector. He has been afforded no opportunity to register as an elector for, under the regulatory provisions of statute, *which are reasonable,* the registration books have not been open during

the period of time in which petitioner has established his citizenship as an Oklahoman. Registration is merely a certification of that which exists—substance is the thing that is real.

In due time petitioner filed his notification and declaration as a candidate at the ensuing primary and general elections for Democratic nomination and election to be a representative in the Legislature of Oklahoma and from the district of his residence, Garvin County, District No. 2. Petitioner's filing was stricken by the order of the respondent Election Board, for failure to show registration as required by rule of interpretation for the exercise of the right to vote. The result of the order striking the name from the ballot restricts petitioner's right and all others similarly situated, the right of the people in the district to select, and the right of Easter Brown to run for and be a public officer.

While petitioner may register, as provided by law, in sufficient time to exercise his right of ballot in the ensuing primary and general elections and thereby exercise his choice of representation in the Legislature from the district, the regulatory provisions of statute deemed to be mandatory by the board are, as shown by the order, an unreasonable restriction upon the right of the petitioner. The item of the form and the statutes, supra, as now construed, are not prerequisite to petitioner's right "to light a' running" or to stand for public office, in Oklahoma. Swindall v. State Election Board, 168 Okla. 97, 32 P. 2d 691; Cooley, Const. Lim. (6th Ed.) pp. 757, 758; McCreary on Elections (4th Ed.) 137; Woodward v. Barbur, 59 Ore. 70, 116 P. 101; State v. Olcott, 67 Ore. 214, 135 P. 95, 902; Wilson v. Bartlett, 7 Idaho, 271, 62 P. 416; State v. Sullivan, 283 Mo. 546, 224 S.W. 327; Sayman v. Becker (Mo. Sup.) 269 S.W. 973; In re Sullivan, 307 Pa. 221, 160 A. 853; Meffert v. Brown, 132 Ky. 201, 116 S.W. 779, 1177; Piuser

v. Sioux City, 220 Iowa, 308, 262 N.W. 551, 100 A.L.R. 1298.

Under the provisions of Constitution denoting the public policy, the writ should issue.