STATE ex rel. ROBINETT
v. JARRETT, Dist. Judge.

No. 33651. June 8, 1948.

*196 P. 2d 849.*

Stevens & Winterringer, of Shawnee, for plaintiff.

Reily, Reily & Spurr, of Shawnee, for defendant.

GIBSON, J. This is an original action by relator for a writ of prohibition against Hon. Kenneth Jarrett, district judge of Pottawatomie county, restraining him from exercising jurisdiction in a cause pending in the district court, wherein the plaintiff therein, Ira E. Bugg, seeks to enjoin the county election board of Pottawatomie county, defendant therein, from placing the name of relator, a candidate for office of county superintendent, upon the ballot for primary election to be held on July 6, 1948.

The relator and Bugg both filed as candidates for the office of county superintendent of public instruction on the democratic ticket subject to the primary election. No others filed therefor. After the filing period closed, Bugg, acting under authority of Tit. 26 O. S. 1941 §165a, filed with the county election board a protest against the recognition of the candidacy of relator upon the alleged ground that she was not eligible by reason of her not having those qualifications for the office which are made a prerequisite to her candidacy by the terms of Tit. 70 O. S. 1941 §21, and challenged the right of relator to have her name placed upon the ballot. Upon a hearing on May 14, 1948, the board found relator to be eligible and entitled to have her name placed upon the ballot and overruled the protest. Thereafter, on the same day, Bugg filed his said action in the district court. In addition to the foregoing facts it is alleged therein that by reason of the disqualification of relator, the plaintiff, Bugg, is unopposed for the nomination and is entitled as a matter of right to have a certificate of his nomination issued to him by the board; that plaintiff should not be compelled to oppose a disqualified candidate for the office; and that unless enjoined the board would place the name of relator upon the ballot. And it is therein urged that, by reason of the time element involved and the public importance of the matter, a temporary injunction should be granted at the inception of the action. A temporary injunction was awarded ex parte.

As grounds for the writ it is urged (1) the district court is without jurisdiction in equity because the question

is purely political; (2) the district court is without jurisdiction because by statute (Tit. 26 O.S. 1941 §165a) exclusive and final jurisdiction is vested in the election board; and (3) that, if jurisdiction obtains, the court is undertaking to make an unauthorized application of judicial force.

Being of the opinion that the question involved is purely political and hence controlled by established law applicable thereto, we deem it unnecessary to consider the grounds urged other than the first.

It is established law in this jurisdiction, and generally so elsewhere, that courts of equity are without jurisdiction to enforce or protect purely political rights. City Council of City of McAlester et al. v. Milwee et al., 31 Okla. 620, 122 P. 173; State ex rel. Cameron et al. v. Jones et al., 165 Okla. 193, 25 P. 2d 648; 28 Am. Jur. 267, §72. In the McAlester case, it is said:

"Courts of equity are only conversant with matters of property and the maintenance of civil rights and will not interfere to enforce or protect purely political rights. This doctrine has been universally applied in other jurisdictions where equity has been invoked to interfere in matters preceding an election. In Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220, the Supreme Court of that state, after a review of the authorities, reaffirmed the doctrine previously adopted that chancery has no jurisdiction to protect purely political rights such as those in respect to public elections, and held specifically that an injunction could not be granted to prevent the giving of election notices or the certifying of nominees for districts created by an apportionment act claimed to be unconstitutional, because such rights were purely political and enforceable only at law."

And, in the Jones case, supra, there is declared:

"In Anthony v. Burrow et al. (Circuit Court, Kan.) 129 Fed. 783, it was held:

" 'A court of equity has no jurisdiction to enjoin officers of a state, acting under a state statute, from issuing a certificate of nomination to a candidate for representative in Congress, the right involved being purely political, as distinguished from a civil or property right, to which alone the jurisdiction of equity extends.'

"To a similar effect is Smith v. Doyle et al. (Ky.) 76 S. W. 519."

In the instant case the only right of Bugg, if any, that is involved, is to be declared the nominee without submission of the question at the primary election. In light of the holdings in the quoted cases, we think it manifest that the right sought to be protected is purely political, and therefore the trial court was without jurisdiction to enjoin.

Writ granted.

HURST, C.J., DAVISON, V.C.J., and ARNOLD and LUTTRELL, JJ., concur. RILEY, J., concurs specially. WELCH and CORN, JJ., concur in result.

---

RILEY, J. (concurring specially). The facts are correctly stated in the opinion herein.

The proceedings before respondent Jarrett are for injunction, and are purely equitable in nature.

As a general rule, courts of equity are without jurisdiction to enforce purely political rights. 28 Am. Jur. 267, sec. 72. That rule is applicable in Oklahoma. City Council of City of McAlester v. Milwee, 31 Okla. 620, 122 P. 173, 40 L.R.A., N.S., 576; State ex rel. Cameron v. Jones, 165 Okla. 193, 25 P. 2d 648.

This rule is particularly applicable in all questions involving the regularity of party organizations and in matters involving nominations of party candidates where the nominations are held under rules and regulations promul-

gated by the party organization and are not governed by any statutory proceedings. 18 Am. Jur. 273, sec. 143.

But this does not mean that a statutory political right may be violated or denied with impunity. These political rights of a citizen are as sacred as are his rights to personal liberty and property, yet he must go into a court of law for redress when such rights are invaded or he is deprived of them. 28 Am. Jur. 267.

Section 5, art. 3 of the Constitution provides that the Legislature shall enact laws providing for a mandatory primary system which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers for all political parties, including United States Senator, with the further provision that such primary system shall not preclude the right of the people to place on the ballot, by petition, any nonpartisan candidate. The Legislature has enacted a primary election system as required.

The general rule is that a compulsory primary election law forms a part of the general election laws of the state and if such intent is expressed, candidates for major political parties can only be officially nominated and have their names printed upon the general election ballots by procuring their nomination in the manner provided by such primary election law. 18 Am. Jur. 278, 279, sec. 149.

The necessary effect of a primary election law is to give an official character to a primary nominee. Although not a public officer, the law gives such nominee a certain and definite standing and endows him with at least one valuable privilege or right which he may enforce, namely, the right to have his name printed on the official ballot. Until the time of the election, he is guaranteed, and in fact holds, a recognized legal position. 18 Am. Jur. 285, sec. 157.

In this case, had the county election board denied Celestia Robinett's noti-fication and declaration after she had shown the proper qualifications or eligibility, she would have had the legal remedy by mandamus. She would have had the same remedy had the Board stricken her name as a candidate. Love v. State Election Board, 197 Okla. 157, 170 P. 2d 193; Brown v. State Election Board, 197 Okla. 169, 170 P. 2d 200; Love v. State Election Board, 197 Okla. 165, 170 P. 2d 191.

Ira E. Bugg has the same remedy by proper proceedings in mandamus, but it is not an equitable remedy which may be enforced by injunction. Whether that right be a statutory nominee of the Democratic party in the general election or merely the right to have his name go on the ballot along with that of relator, Celestia Robinett, in the primary election to be held July 6, 1948, that right grows out of or rests upon the provisions of the primary election laws and is therefore a "legal" right which may be enforced by proper action in mandamus, as above pointed out, but not in equity by injunction. Therefore the district court is without jurisdiction to determine the rights of the parties in an injunction proceeding.

The principles of law involved may be summarized as follows:

1. The general rule is that court of equity are without jurisdiction to enforce purely political rights, but this does not mean that a statutory political right may be violated or denied with impunity.

2. A mandatory or compulsory primary election law forms a part of the general election laws of the state.

3. The necessary effect of a primary election law is to give an official character to the primary nominee.

4. The primary election law creates or gives certain legal rights to persons seeking nominations thereunder. Such rights are to be enforced or protected as against state or county election

boards by the legal remedy of mandamus and not in equity by injunction.

I concur in the granting of the writ.