In re BIG CABIN CREEK CONSERVANCY DISTRICT NO. I OF CRAIG COUNTY, Oklahoma.

No. 39848.

Supreme Court of Oklahoma.

Feb. 5, 1963.

As Corrected May 16, 1963.

Rehearing Denied June 18, 1963.

Wheatley & Wheatley, Vinita, for appellants.

William W. Bailey, Vinita, for appellees.

BERRY, Justice.

Appellants' attack upon the proceedings to form the Big Cabin Conservancy District No. 1 is limited to the proposition that the requisite number, 51%, of the landowners in the proposed district did not sign the petition upon which the proceeding was based.

The evidence bearing upon this proposition is that under authority granted by 82 O.S.1961, § 542, the Mayor of Vinita, Oklahoma, pursuant to resolution of the governing body of said City, signed the petition. Vinita lies within the proposed district. The relevant provisions of the cited statute read thusly:

"Before any court shall establish a district as outlined in § 541 of this Title, a petition shall be filed in the office of the Clerk of the Supreme Court of the State of Oklahoma. Said petition, if said district does not affect more than one county, shall be signed by fifty-one per cent (51%) of the owners of the land embraced in the proposed district. The governing body of any city or town shall have the power and authority to instruct the mayor or chief executive officer to sign any petition under this Act by resolution duly passed and entered on the records of the city, and the signature of any city or town, as provided herein, shall be accepted in lieu of one-half the number or percentage of the ownership of land required to sign the petition."

The above quoted matter is hereafter referred to as "statute".

The trial court construed the statute as meaning that the action of the Mayor constituted an acceptance on the part of 25% of the landowners within the district, and since more than 26% of the rural landowners signed the petition the petition in fact bore the signatures of 51% of the landowners. The record shows that 364 of the 925 rural landowners signed the petition.

Appellants argue that the cited statute contemplated that the City of Vinita would be represented by the mayor, and due to the greater number of landowners lying inside the corporate limits of the city, the mayor could by passing a resolution sign for one-half of the persons living inside the city limits. An additional 51% of the landowners owning land outside of the city limits of the city of Vinita, but inside the area to be affected, would then be required to sign the petition in order to establish the district. In the present case, the statute is *ambiguous,* and the Court ruled in favor of the municipal corporation, a ruling which is contradictory to the established principles of law.

Appellants make the further argument that benefits accruing to rural landowners will be greater than that to urban landowners, therefore, the contributions of the former will greatly exceed that of the latter; that for said reason the trial court's construction of the statute is harsh and not in keeping with democratic principles.

To our way of thinking, the statute is ambiguous and is therefore open to construction.

As we read the statute, the Legislature made clear that if a proposed conservancy district does not affect more than one county, 51% of the owners of land within the district must sign the petition under which it is sought to create the district. Members of the Legislature no doubt realized that if the proposed district embraced a city, it would be an onerous task on the part of those circulating the petition to canvass those owning land therein. For this reason the Legislature provided that acceptance of the petition by city should be "in lieu of one-half of the number or percentage of the ownership of land

required to sign the petition." It follows that the acceptance by the city constitutes the equivalent of acceptance and signatures of one-half of the required minimum of 51%. Therefore upon acceptance by the city only one-half of the minimum 51% goal is reached and the achievement of the remaining one-half of the minimum 51% is left to the approval of the rural owners. It is clear to us that the Legislature did not intend that a city accept on behalf of rural owners and for said reason in order to present a valid petition in the instant case, it was necessary for 51% of the rural owners to sign the petition. To hold otherwise, in view of the statutory formula and the right given the city, would impose on a majority of the rural owners the will of the city and of a minority of the rural owners. Since less than 51% of the rural owners signed the petition it did not bear the requisite number or percentage of affected owners.

To construe the statute as it was construed in the instant case by the trial court is to say that the Legislature intended to give a city (urban landowners) a greater voice in creating a conservancy district than rural landowners. We do not believe that the Legislature so intended. To our way of thinking, the Legislature intended that urban landowners be given a voice in matters of this kind.

In construing the statute we have kept in mind the well-established rule that an ambiguous statute will be given a reasonable and sensible construction. In the second paragraph of the syllabus to Brown v. State Election Board, 197 Okl. 169, 170 P.2d 200, this was said:

> "Where a statute is ambiguous or the literal meaning of the statute would lead to absurd consequences which the Legislature probably did not contemplate, the courts must presume that such consequences were not intended, and should adopt a construction that is reasonable and will avoid an absurdity."

See also 50 Am.Jur. "Statutes", Sec. 377, p. 385, where it is said that "If possible doubtful provisions (of a statute) should be given a reasonable, rational, sensible and intelligent construction."

For reasons stated, the judgment of the trial court is reversed and said court is directed to enter judgment for appellants.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON and WILLIAMS, JJ., concur.

WELCH, JACKSON and IRWIN, JJ., dissent.