In re Appeal on **CONSERVANCY DISTRICT NO. 37 IN LINCOLN AND OKLAHOMA COUNTIES, Oklahoma.**

**Willie KUHR and all other Protestants, Plaintiffs in Error,**

v.

**H. W. GOGGIN and all other Petitioners, Defendants in Error.**

**No. 40505.**

Supreme Court of Oklahoma.

Nov. 24, 1964.

Rehearing Denied Jan. 26, 1965.

P. D. Erwin, Chandler, for plaintiffs in error.

Robert W. Blackstock, Bristow, for Kickapoo Nation Water and Soil Conservancy Dist. No. 37, defendants in error.

DAVISON, Justice.

This is an appeal from a decree of the District Court of Lincoln County establishing the "Kickapoo Nation Water and Soil Conservancy District No. 37," in Lincoln and Oklahoma Counties, under the provisions of 82 O.S.1961, §§ 531, 532 and § 541 et seq.

The petitioners for the formation of the District were certain owners of land located in the above counties. Some of the area in the District is within the Town of Luther (Oklahoma County) and the municipality joined in the petition. Those protesting the formation of the District have perfected this appeal.

Protestants urge that the trial court erred in refusing to include the names of parties owning only oil, gas and mineral rights when it calculated the number of petitioners and protestants owning land in the proposed District. Protestants point to 82 O.S. 1961, § 531, providing that the term "land" or "property," unless otherwise specified means "real property" as defined by the laws of the State, and embraces, inter alia, railroads, and other improvements of a public utility nature. They cite 21 O.S.1961, § 102 (Crimes and Punishment) and 54 O.S.1961, § 202 (Partnership) defining "real property" as including land and any interest or estate in land, and 25 O.S.1961 § 26(2) (Definitions) which states:

"The words 'real property' are co-extensive with lands, tenements and hereditaments."

Protestants cite authority that a conveyance of an interest in oil and gas rights vests in the grantee an interest in land. No authority is furnished that involves the particular question raised by protestants.

■ In construing statutes the cardinal rule is to ascertain and give effect to the legislative intention and to first seek that intention in the language of the statutes. Mid-Continent Pipe Line Co. v. Stephens County, Okl., 312 P.2d 883.

The statutes first herein cited provide for formation of "conservancy districts" upon petition by owners of land, protest by described parties, and improvement and assessment. The purposes of such districts (82 O.S.1961, § 541): for preventing floods, regulating stream channels, reclaiming land, irrigation, etc., are applicable only to the land surface. A sufficient petition (82 O.S. 1961, § 542) requires a minimum percentage of owners of the land and should set forth that the district be conducive to public health, safety, convenience and welfare. Ownership, Sec. 542, supra, is evidenced prima facie by the tax duplicate. This reflects surface ownership. Effective protest, 82 O.S.1961, § 545, is by the required percentage of the area of land in the proposed district. It is well known that oil and gas and mineral ownership is often divided among many owners, and sometimes into ownership of strata under the surface. It is obvious that, based on numerical computation, the numerous mineral owners would outnumber the relatively few owners of a large surface area, and thus keep from the latter owners any benefits to the surface, as contemplated under the law. The same result would naturally follow as between the owner of a single tract with partial mineral ownership and the owners of the balance of the minerals.

■ It is our conclusion that in enacting the above statutes it was the legislative intention that only the owners of the surface be considered in determining the number or percentage of petitioners and protestants in a proceeding to establish a conservancy district.

Protestants contend that the statute requires that 51% of the owners of the area outside the Town of Luther join in the petition.

The merit, if any, in this contention depends on whether the District is properly a "Conservancy District" or should be a

"Master Conservancy District." One of the acts authorized by 82 O.S.1961, § 541(c) in the formation of a Master Conservancy District is inclusion therein of land lying within a municipality. Under 82 O.S.1961, § 542, the petition for formation of a Master Conservancy District embracing land outside the corporate limits of a town is required to have the signatures of 51% of the owners of the area outside the town "(whether the proposed district lies within one county or more)."

The statute, 82 O.S.1961, § 541, authorizes formation of both kinds of districts with certain purposes applicable to a "Conservancy District," and additional purposes applicable to a "Master Conservancy District." The instant petition sets forth only those purposes applicable to a "Conservancy District."

Also 82 O.S.1961 § 542, authorizes any city or town to:

"* * * sign *any petition under this Act* by resolution duly passed and entered on the records of the city, and the signature of any city or town, as provided herein, shall be accepted in lieu of one-half the number or percentage of the ownership of land required to sign the petition." (Emphasis ours.)

It also appears, although not a point in controversy therein, that the district involved in the case of In re Big Cabin Conservancy District No. 1 of Craig County, Okl., 382 P.2d 756, covered an area in Vinita, Oklahoma, and the petition was signed by the city, yet the proceeding was to form a "Conservancy District." We point out that the district there involved failed for want of signatures of 51% of the rural owners, required by that part of Sec. 542 next above narrated and quoted and not that part of Sec. 542, supra, dealing with establishment of a Master Conservancy District.

■ We conclude that the District was neither formed nor required to be formed as a Master Conservancy District.

Protestants contend the evidence did not show that intervening territory would not be benefited. They argue that evidence of this nature is a prerequisite to the formation of a district. The record reflects that the District is composed of areas along a number of creeks which flow into Deep Fork river. At three points along Deep Fork there are areas that are not included in the District and to this extent the District does not constitute an entirely contiguous area.

A part of 82 O.S.1961, § 542, states:

"* * * Said district need not be contiguous provided it be so situated that the public health, safety, convenience or welfare will be promoted by the organization as a single district of the territory described and provided further that the intervening territory be not benefited by the construction of the works in the district so formed."

Protestants cite In re Central Oklahoma Master Conservancy District, Okl., 359 P.2d 725. We fail to see that the case supports the contention. In that case the protestant urged that omitted intervening territory was benefited by the district. The decision held that the benefits to Tinker Air Force Base, by being able to buy water from the district, was not the prohibited benefit contemplated by the Conservancy Act. It stated that under the above quoted provision the intervening territory should not be benefited at the expense of the taxpayers of the district. The case does not require the negative proof at the hearing on formation of the district.

Of course it is contemplated by the statutes, supra, that the persons interested in the formation of the district be diligent to include therein the territory expected to benefit from its formation. However, after the decree of formation of the district, 82 O.S. 1961, § 545, and appraisers have been appointed, 82 O.S.1961, § 601, to appraise all benefits and damages to lands within the district, there is provision, 82 O.S.1961, § 603, for inclusion in the district of other lands found to be benefited. By such action any intervening lands may be prevented

from benefiting at the expense of lands within the district.

■ Protestants contention is without merit.

It is further urged by protestants that the present Conservancy District cannot include lands previously incorporated into a prior conservancy or drainage district.

■ In presenting this proposition the protestants refer to certain alleged conservancy districts and drainage districts by name. Several of these do not even appear in the record. The others, although referred to by name in the testimony, are not shown by the proof as to extent, encroachment, or whether they are in fact still in existence. This court has held that questions or matters not presented or not supported by the record cannot or will not be considered by this court. Tandy v. Garvey, 115 Okl. 214, 242 P. 546, and New York Life Ins. Co. v. Razzook, 178 Okl. 57, 61 P.2d 686.

As their fifth proposition the protestants urge that all protests filed must be counted. The facts underlying this contention are that some landowners, having signed both the petition and a protest then withdrew their names from both papers, and others withdrew their names from their prior protest. The withdrawals were made prior to the hearing on the petition for formation of the District.

■ The law in this state is adverse to protestants' contention. See In re Initiative Petition No. 2, City of Chandler, 170 Okl. 507, 41 P.2d 101, 102, wherein it is stated:

"But this court is committed to the doctrine, in the absence of statute, which permits withdrawal after filing a petition and before action thereon is taken. * * *

"To absolutely prohibit a citizen from withdrawing his name from a petition voluntarily signed by him, at any time after it has been filed, but before action is had either on the sufficiency of the petition or on the relief sought by the petition, would be a harsh and unreasonable rule * * *."

See also State ex rel. Payne v. School Dist. No. 97, Blaine County, 186 Okl. 177, 97 P.2d 548. The above rule of law is also applicable to withdrawal of a person's name from a protest to a petition for a Conservancy District.

Protestants further contend that the petitions were not signed by the requisite number of landowners.

This proposition involves that portion of 82 O.S.1961 § 542, stating as follows:

"If said district affects two or more counties, the said petition shall be signed by twenty-five percent (25%) of the owners of land embraced in the proposed district in each county, each county being considered as a separate unit for the determination of whether a sufficient number have signed the petition, or by one hundred (100) or more property owners of each county, any part of which is located in the proposed district, if that number resides within the portion of the county described in the petition, otherwise fifty percent (50%) of such property owners residing therein; * * *"

The lower court found that in Lincoln County the number of landowners in the District was 288 and that 150 signed the petitions. As to Oklahoma County the court found the total number (exclusive of those in the Town of Luther) of landowners in the District was 50 and that 36 signed the petition.

■ Protestants argue that, based on the above figures, the number of owners in both counties was 338 and 25% thereof (based on Sec. 542, supra), or 84.5(85) was the minimum required signers in each county, and consequently there was less than the required number of petitioners in Oklahoma County. Protestants cite In re Brazil Creek Conservancy District No. 4 of Latimer and LeFlore Counties, Okl., 382 P.2d 746. This argument overlooks the latter portion of that decision giving additional grounds for insufficiency of the Latimer County portion of the petition, in that it did not meet the

other alternative provisions of Sec. 542, supra, stating:

"* * * It is also clear that the other part of the quoted statute was not satisfied. This is true because the petition was signed by neither 100 landowners in Latimer County nor by 50% of the landowners therein which would have to be 57 or more in Latimer County.".

This defect is not present in the Oklahoma County portion of the petition. As shown by the above quoted figures applicable to the portion of the District in Oklahoma County, and as reflected by the record, more than 50% of the landowners therein signed the petition. This contention is not made as to the sufficiency of the petition in regard to the Lincoln County part of the District. Protestants' contention has no legal foundation.

Protestants next argue that the statutes on organization of conservancy districts and master conservancy districts are vague, ambiguous, contradictory and unconstitutional.

■ In presenting this proposition their brief merely cites and quotes from the statutes hereinbefore cited requiring a sufficient percentage or number of landowners as petitioners and a requisite percentage of area for protest. The authority cited is applicable only to the extent of the treatment given by courts to ambiguous statutes. It is not demonstrated wherein any ambiguity exists in the present statutes.

■ The law applicable is stated in School Board of Rural School Dist. No. 71, Beaver County v. Henson, 144 Okl. 202, 291 P. 115:

"Where parties seeking to question the constitutionality of a statute and fail specifically to point out the unconstitutionality, and cite no authority in support thereof, this court is not required to review such question."

[10] For their final proposition the protestants complain that the lower court did not correctly compute the number of petitioners or the amount of acreage included in the protests. Their brief in support of this proposition gives the surnames of many owners and described numerous tracts, but fails to point out in the record where they were wrongfully excluded or included. No reference is made to the record of evidence substantiating the charge of erroneous calculation by the lower court. From our examination of the evidence it appears that the lower court's computation is correct.

We conclude that the judgment herein should be and is hereby affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.