TAYLOR et al. v. LANGLEY et al.

No. 29115. Feb. 25, 1941.

Rehearing Denied April 1, 1941.

Application for Leave to File Second Petition for Rehearing Denied April 29, 1941.

*112 P. 2d 411.*

Butler, Brown & Rinehart, of Oklahoma City, for petitioners.

R. F. Barry, of Oklahoma City, Mac Q. Williamson, Atty. Gen., and Peyton Ford, Asst. Atty. Gen., for respondents.

WELCH, C. J. The claimant, Leo Langley, suffered injury to his thumb while finishing and waxing a floor in a building being constructed for Charles Bagwell Taylor.

The controlling question is whether the relation of employer and employee existed between Taylor and Langley.

Langley was not interested in the construction of the building, but he did have charge of the papering, decorating, and floor finishing. This was by written contract. By its terms Langley, for a fixed price, was to furnish the labor and paint, paper, and decorate, and finish the floors. The contract by its terms definitely fixes the relationship of claimant to Taylor as that of an independent contractor.

It is not suggested either in the record of evidence or in the briefs that the contract was or could have been a subter-

fuge resorted to in an effort to conceal a relationship of employer and employee. It is rather the contention of claimant that the method of operation or the actions of the parties subsequent to the contracting had the effect of changing the relationship of the parties and created the relationship of master and servant so that claimant was the employee of Taylor and not an independent contractor.

This contention is bottomed upon four propositions, which we quote and consider separately:

First: "Taylor furnished everything but the tools and equipment of Langley's trade. These Langley furnished."

On this point it is merely shown that Taylor furnished the material or the major portion of it, all in accord with the specific provisions of the contract.

Second: "Taylor reserved the right to hire and fire the men working with and under Langley, and which right was by him exercised."

The evidence does not bear out any contention of any such reservation of right whatever. Taylor did request or direct the firing of two of Langley's employees whose work was unsatisfactory. This view was apparently acquiesced in by Langley, and those two men were discharged.

Third: "Where to work and how to work. When to go to work and when to quit work."

Here it is shown that Langley by similar contract worked on several houses for Taylor, and to co-ordinate the work of Langley with other contractors, Taylor did tell Langley, in substance, when it was advisable for certain of the work in certain of the houses to go forward.

Fourth: "Langley worked only so long as his work satisfied Taylor."

In connection with the several contracts, it was stated in the evidence that Taylor intended to continue to so use the services of Langley as long as those services were satisfactory. That is easily susceptible of the construction that Taylor would no longer so contract with Langley as to other houses when the time came that Langley's work was unsatisfactory. There was nothing in this contract here involved giving Taylor such control over Langley on this contracted job.

From an examination of the entire record we find no evidence of such control of the details of work or of the workmen as would constitute Langley the servant or employee of Taylor. We deem it wholly unnecessary to quote the contract entered into between the parties in writing. It is in general form an ordinary contract containing detailed specifications of the work contracted to be done or procured to be done by Langley and paid for at the contracted price by Taylor. It seems to be wholly in keeping with the form generally used to create the fixed relationship of an independent contractor as distinguished from the relationship of master and servant or employer and employee. Since the parties by formal written agreement fixed their status thus, it cannot be said from any of the evidence that their status was otherwise, or subsequently became otherwise.

In numerous former decisions this court sustained the status of the parties as created by their own written contract. See Matherly v. Hamer, 174 Okla. 403, 50 P. 2d 619; Oklahoma Publishing Co. v. Greenlee et al., 150 Okla. 69, 300 P. 684; Baker Ice Machine Co. v. Pinnick, 167 Okla. 493, 30 P. 2d 908. The claimant cites no case in which we have ruled otherwise.

We have also considered cases where the relationship depended on oral agreements. In such cases there was not the detailed agreement or the statement of definite specifications usually present in written contracts, and fully present in the contract here considered. Nevertheless, in such cases we were in duty bound to sustain, and did sustain, the relationship created by the voluntary oral agreement of the parties. See Southland Cotton Oil Co. v. Pritchett, 167 Okla. 6, 27 P. 2d 819; Porter Construction Co. v. Burton, 156 Okla. 72, 8 P. 2d 64; Producers Lumber Co. v. Butler, 87 Okla.

172, 209 P. 738; Evans v. State Industrial Commission, 161 Okla. 288, 18 P. 2d 885; Southern Construction Co. v. State Industrial Commission, 112 Okla. 248, 240 P. 613. In other cases cited for claimant there was contention for the relationship of independent contractor which was denied. In each of those cases there was oral employment and such reservation of control and direction of performance as to definitely show the relationship to be that of employer and employee. See Oklahoma Pipe Line Co. v. Lindsay, 113 Okla. 296, 241 P. 1092; E. A. Liebman Ice Co. v. Moore, 186 Okla. 216, 97 P. 2d 37; Briscoe Construction Co. v. Miller, 184 Okla. 136, 85 P. 2d 420; State Highway Commission v. Gaston, 185 Okla. 540, 94 P. 2d 915. Those decisions are not in point here for controlling differences in the fact situation.

Where this question of the relationship of the parties is involved, our former decisions discuss the items of test by which we examine each case upon its peculiar facts. We see no need to repeat the well-known rules which we have have often stated in language identical or essentially similar.

Here there was a written contract by its plain terms fixing the status of Langley as an independent contractor. No action of the parties abrogated or changed the contract. Both parties proceeded under it. They both complied with it. The owner, Taylor, reserved no right to control Langley as a servant or mere employee would be guided, directed, and controlled. Taylor did observe the progress of Langley's work, but in no more detailed way than an owner might prudently and properly observe the progress of work on any contracted job of construction, or plumbing, or painting and finishing. Taylor was engaged in building houses for sale. He usually or often had several houses being built at the same time. It appears most of the work was done for him upon contract. The practice of Langley doing the finishing work on these houses upon separate contract as to each house appears to have been mutually satisfactory and desirable as to both parties. With more than one building in construction, it would be reasonable prudence for Taylor to request compliance with each contract, and such progress by Langley in each house as would best fit in with the progress of other crafts or contractors, and thus promote the prompt and efficient completing of each house. It would also be an act of reasonable prudence for Taylor to advise Langley and suggest or even demand the dismissal of an employee of Langley who was grossly negligent or careless in his work or incompetent to do the work. It appears that whatever Taylor did along these lines was acquiesced in by Langley. And these things Taylor might do and did do in this case without destroying or changing the contractual status.

There is no evidence justifying a conclusion that Langley was an employee. He was an independent contractor, and therefore not entitled to an award under the Workmen's Compensation Law. Section 13348, O. S. 1931, 85 Okla. St. Ann. § 1.

The claimant questions the jurisdiction of this court to consider this case and urges that we are without jurisdiction because the petitioners did not exactly comply with section 13363, O. S. 1931, 85 Okla. St. Ann. § 29, in presenting this appeal. Essential facts are that after the decision of the Industrial Commission, petitioners' attorneys called the secretary of the State Industrial Commission by telephone and were informed that a bond in the sum of $1,500 would be sufficient. Petitioners obtained a bond in the sum of $2,000 executed by the American Surety Company of New York, and on March 1, 1939, said bond, with the petition for review, was filed in the office of the clerk of this court. The bond was not filed with the secretary of the Industrial Commission and was not approved by her. On March 22nd petitioners filed an application for a nunc pro tunc order in which they requested permission to withdraw the bond so executed and filed in the office of the Clerk of the

Supreme Court and file it in the office of the secretary of the State Industrial Commission as of March 1, 1939. Respondent countered with a motion to dismiss said action for failure to comply with the provisions of section 13363, supra, insisting that said failure had deprived this court of jurisdiction of the action.

The pertinent provisions of the section referred to are as follows:

"Appeal to Supreme Court—Requirements. The award or decision of the commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within thirty days after a copy of such award or decision has been sent by said commission to the parties affected, an action is commenced in the Supreme Court of the state to review such award or decision. Said Supreme Court shall have original jurisdiction of such action, and is authorized to prescribe rules for the commencement and trial of the same. Such action shall be commenced by filing with the Clerk of the Supreme Court a certified copy of the award or decision of the commission attached to the petition by the complainant wherein the complainant or petitioner shall make his assignments or specifications as to wherein said award or decision is erroneous or illegal. Provided, however, no proceeding to reverse, vacate or modify any award or decision of the commission wherein compensation has been awarded an injured employee shall be entertained by the Supreme Court unless the secretary of the commission shall take a written undertaking to the claimant executed on the part of the respondent or insurance carrier, or both, with one or more sureties to be approved by the secretary, to the effect that the appellant will pay the amount of the award rendered therein, or on the further order of the commission after the appeal shall have been decided by the Supreme Court. Before the Clerk of the Supreme Court shall accept the action for filing a certificate from the secretary of the commission shall be required, showing this provision has been complied with. . . ."

In the case of In re Benson, 178 Okla. 299, 62 P. 2d 962, we pointed out that statutes giving the right to appeal are to be liberally construed, and that where the literal meaning of a statute would result in great inconvenience or lead to absurd consequences which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which will promote the ends of justice and avoid the absurdity. It is respondent's theory that all of the various provisions of the above-quoted statute constitute conditions precedent to the review of an award and that a failure to comply strictly with any of them defeats the jurisdiction of this court. In the case of Tidal Oil Co. v. State Industrial Commission, 140 Okla. 5, 282 P. 359, it was held that the controlling part of the statute is that part which provides:

"Before the Clerk of the Supreme Court shall accept the action for filing, a certificate from the secretary of the commission shall be required showing this provision has been complied with."

It was held that the filing of a certificate was essential to the perfecting of an appeal to this court. Such a construction of the statute was no doubt premised upon the viewpoint that the Legislature had in mind but a single purpose in the enactment of all the provisions above referred to, but, as we read the statute, it is clear that its purpose was not single but twofold, that is, certain conditions are prescribed for the commencement of an action in this court and are essential to invoke our jurisdiction, while other provisions thereof were intended to relate only to the matter of securing payment of the award to which a claimant may be entitled. When this twofold purpose is kept in mind in reading the statute, we find little difficulty in arriving at the meaning of the various requirements therein provided.

To follow the contentions of respondent and the interpretation of the act found in Tidal Oil Co. v. State Industrial Commission, supra, would be to hold that the jurisdiction of this court and its power to take cognizance of and

decide the issues presented is made to depend upon the action of the secretary of the Industrial Commission. We cannot conceive that the Legislature intended that our jurisdiction should be made dependent upon possible arbitrary action on the part of the secretary of the Industrial Commission, but that it was intended that in the event of such arbitrary action this court would be entitled to act in order that the right of review might be preserved. Any other construction of the statute might lead to absurd consequences and would ultimately defeat the ends of justice.

We therefore proceed to analyze the various provisions of the act with a view of determining the true legislative intent. It is noted that an action is commenced in this court if, within 30 days after a copy of the award or decision has been sent to the parties affected, there is filed with the clerk of this court a certified copy of the award or decision of the commission attached to the petition of complainant wherein the complainant or petitioner makes his assignments or specifications of error. Clearly a compliance with such provisions is necessary to give this court jurisdiction of the action to review. If it was the intention of the Legislature that the approval of the bond should be essential to the commencement of the action in this court, it seems reasonable that such provision would have been included with other provisions relating to the commencement thereof. It also seems reasonable to assume that the Legislature intended that when the action was commenced the jurisdiction of the court was invoked. Such conclusions are fortified by consideration of the next provision to the effect that no proceeding shall "be entertained by the Supreme Court" unless a written undertaking shall be left with the secretary of the commission conditioned for payment of the award entered by the commission. The meaning of this provision is clear. If such an undertaking is not executed and approved, such action shall not be entertained, that is, this court shall immediately dismiss the same and refuse to take further cognizance thereof.

We pass to a consideration of the provision requiring the clerk of this court to require a certificate from the secretary of the commission showing that an approved bond is on file before accepting the action for filing.

Bearing in mind the twofold purpose of the statute, it becomes apparent that the sole purpose of said provision was to make certain the securing of the award by the petitioner and was not intended to be used as an instrumentality to divest this court of jurisdiction to determine whether or not there had been a substantial compliance therewith by the clerk in filing the action. Since the action had been commenced by filing the petition, together with a copy of the award, within the prescribed period of time, the power of this court was invoked to determine whether or not there was such a substantial compliance. It is true that when the petition was filed there was no certificate of the secretary of the commission to the effect that an approved bond was on file with the commission, but the bond itself was presented and accepted for filing by the clerk. No contention is made that the bond is insufficient in form or amount. The secretary of the commission testified that the bond was sufficient to meet the requirements of the commission. No contention is made that the award is not, in fact, adequately secured. In the final analysis, therefore, respondent would have us to hold that our jurisdiction is divested because a bond, sufficient and proper to secure the award, was filed with the clerk instead of a certificate that such bond was filed with the Industrial Commission. As we view it, neither the ends of justice nor the language of the statute would justify such a holding.

Of course, the clerk should not have accepted the action for filing until he was furnished with the proper certificate from the secretary of the commission, as provided in the final quoted

words of the act. But the clerk did accept and file the action, together with the bond itself. While that action of the clerk was not in accord with the act, and should not be followed again when a reading of the act shows it to be in error, yet we cannot hold that such act of the clerk was a nullity, or operates to destroy or withdraw the jurisdiction of this court. We are impressed with the thought that a correct handling of the matter by the clerk would have resulted in the proper and timely filing of the bond and certificate in exact compliance with the act. We are also impressed with the thought that this court should be slow to penalize a party seriously when, but for an erroneous action of the clerk, an occasion for such a penalty would probably not have arisen; or when a correct action by the clerk would in all probability have fully protected such party from any such possibility or penalty. The action of the clerk in accepting and filing the bond was not a literal compliance with the statute, but we hold that the same, in the absence of any showing of detriment on the part of respondent, is a substantial compliance therewith.

Respondent relies upon the cases of Tidal Oil Co. v. State Industrial Commission, supra; Goss v. Cauthers, 143 Okla. 144, 287 P. 1040; Blake v. Smock, 158 Okla. 204, 13 P. 2d 113; Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. 2d 217; which authorities are in harmony with respondent's contention. There is a substantial difference between the fact situations presented in those cases and the fact situation presented here. We find in those decisions, however, certain language which indicates a view contrary to the view herein expressed, and insofar as there is such conflict said language is disapproved.

For the perfection of the record the motion of petitioners to withdraw the bond and file it with the commission perhaps should have been sustained, but we see no purpose in that now, since the case has been presented on its merits and since we are required to hold no award could legally be made.

For the reasons stated, the award is vacated.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur in paragraphs 1 and 2 of the syllabus and that portion of the opinion dealing with those questions, while RILEY and DAVISON, JJ., dissent thereto.

BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur in paragraphs 3, 4, 5, and 6 of the syllabus and that portion of the opinion dealing with those questions, while CORN, V. C. J., and RILEY, OSBORN, and ARNOLD, JJ., dissent thereto.

---

RILEY, J. (dissenting). "Little difficulty" is found by the majority in arriving at a conclusion countenancing a substantial compliance with jurisdictional requirement of section 13363, O. S. 1931. I am less fortunate in being confronted with an insurmountable barrier formed by four well-considered decisions overruled by the majority.

In the inception, the very essence, meaning and derivation of the word "jurisdiction" connotes: (Jus-juris — right-law-dictio—saying or speaking) the power of a court to entertain and decide any cause of action.

Equity has no part to play in deciding upon a question of jurisdiction. It is a matter of law. Therefore substantial compliance is not sufficient but requirements of the law must be met.

The majority opinion finds a "twofold purpose" in the procedural statute, supra, and infers that one of them was heretofore discovered and stated in Tidal Oil Co. v. State Industrial Commission, 140 Okla. 5, 282 P. 359. It was "security," i.e., the appellant from an award of the Industrial Commission must secure the amount of the award before a review may be had. The majority opinion does not clearly state just what the other statutory purpose is, save by the general expression that for such an appellate review, "certain conditions are prescribed for the commencement of an action in

this court, and are essential to invoke our jurisdiction." The fact is this other requirement of the statute is a proper petition, lawfully filed in this court.

Unless security is had for an award and unless a proper petition is lawfully filed, this court shall not, according to the law, "entertain" proceedings to reverse, vacate, or modify any award or decision of the commission.

As the majority view it, the word "entertain" when isolated bestows a modicum of power from which jurisdiction may be perfected or at least constructed. But there is twofold error in this, for while on the one hand the word "entertain" does not have the meaning attributed to it, on the other the solemn declaration of the Legislature is that the clerk of this court shall not accept the action for filing until documentary evidence is furnished from the agency below showing security of the award as aforesaid. The statute reads:

"Before the Clerk of the Supreme Court shall accept the action for filing, a certificate from the secretary of the commission shall be required, showing this provision had been complied with. . . ."

Many cases would be required to be overruled should the majority depart from the rule that he who deals with a governmental agency does so with knowledge of the governmental agent's authority. So that rule stands, at least in words, and under that rule a prohibited filing was no filing at all, and the action of the clerk in placing the cause for review on the docket was a nullity. But let us examine the security by which the award is guaranteed. It was an unapproved undertaking. It is said by the majority that "no contention is made that the bond is insufficient in form or amount." This statement amounts to a holding that the burden is upon the obligee to establish that an unapproved undertaking, required by law to be approved, is invalid as to form or amount. I cannot agree. It is stated by the majority that "in the final analysis, therefore, respondent would have us to hold that our jurisdiction is divested because

a bond, sufficient and proper to secure the award, was filed with the clerk instead of a certificate that such bond was filed with the Industrial Commission." As I view it, this statement assumes a fact not in evidence, and contrary to the record.

No proper bond or undertaking has been filed. To this good day neither the bond nor the sureties thereon nor the terms thereof have been approved. Whereas, the law applicable clearly requires security of the award within 30 days "after a copy of such award . . . has been sent . . . to the parties affected, . . ." the award can only be secured by taking "a written undertaking to claimant" at the time and in the manner provided by law. "A written undertaking" contemplates a bond. A bond is a written acknowledgment of a debt or a contract to pay it, definite as to amount, specific as to terms, adequate as to sureties and under seal, denoting approval. Counsel for petitioner recognized this situation and sought to cure it by the nunc pro tunc order sought. We held in Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. 2d 217:

". . . The bond required is a condition precedent to an original proceeding in this court to review an award of the Industrial Commission." Tidal Oil Co. v. State Industrial Commission, 140 Okla. 5, 282 P. 359; Blake v. Smock, 158 Okla. 205, 13 P. 2d 113.

In Goss v. Cauthers, 143 Okla. 144, 287 P. 1040, we held:

"Before the Clerk of the Supreme Court shall accept the action for filing, a certificate from the secretary of the commission shall be required showing this provision has been complied with. *Held,* this is jurisdictional, and, upon failure to comply with this statute, this court is without jurisdiction to review said award. Said cause should be, and is, dismissed."

It seems to me that in departing from the rule above stated, we depart from regularity of procedure, and in this I am impelled to protest.

In Blake v. Smock et. al., supra, there was a pleading that a bond had been

filed, but the decision dismissing the action turned upon failure to show that the bond "had been *approved* and filed as by law required." This has by the legislative act been required and by this court construed.

In Union Indemnity Co. v. Saling et al., supra, we held the statute requiring a proper bond an approved bond, "a condition precedent to obtaining a judicial review of an award of the Industrial Commission favorable to claimant, is constitutional and is not unjust or unreasonable restraint upon the right of a party adversely affected by such award."

In Tidal Oil Co. v. State Industrial Commission, supra, which is the original view of the law involved, written a decade ago, a petition for review was filed in this court contrary to mandate of law as in the instant action.

"Before the Clerk of the Supreme Court shall accept the action for filing, a certificate from the secretary of the commission shall be required showing this provision has been complied with."

And it was held:

". . . Bond should be given and *approved* by the secretary of the Industrial Commission within that time."

Therein a certificate was filed showing bond made and approved as to amount, terms and sureties, but it was held the requirement was jurisdictional and the time element was 30 days after notice of the award. It was said:

"Same must be filed within 30 days, and before the same can be *legally* filed the supersedeas bond must be given and *approved.* . . . Application for review is dismissed."

Contrary to the majority view of the record, a contention is made that the bond is insufficient in form, and contention is made that the award is not, in fact, adequately secured. It is elementary that a bond is not a bond within contemplation of law until it is approved. Since the legislative act requires as a condition

of appeal a written undertaking approved, it seems illogical to make use of these words: "If it was the intention of the Legislature that approval of the bond should be essential to the commencement of the action in this court, it seems reasonable that such a provision would have been included with other provisions relating to the commencement thereof."

In Village of Glencoe v. Industrial Commission et al., 354 Ill. 190, 188 N. E. 329, the village, like petitioners for review here, were aware that there had been no substantial compliance with the law for review. Therein, as herein, an order nunc pro tunc was sought seeking approval of a bond as here involved. Therein, contrary to the record herein, the clerk testified that he had in fact approved the bond, but omitted to endorse such approval. It was held, inter alia, that in "Workmen's Compensation cases," "courts can obtain jurisdiction only in the manner provided by . . . statute," and the positive provision of statute being such as to require appellant to file with the clerk a bond, that "A bond not approved at the time of its filing is not a bond as required by the act." Consequently, the contention that the clerk in fact approved the bond was unavailing, for "the record must show *approval* of the bond."

Therein, as herein, the motion for order nunc pro tunc came subsequent to expiration of the time within which proceedings for review of the award must be commenced. Therein, as it appears to me herein, "during all that time the court had before it a record showing no jurisdiction of the subject matter, and, of course, could not by a nunc pro tunc order confer jurisdiction of the subject matter on itself." For jurisdiction, as the term denotes, is the ipsi dixit, not of men, but of the law.

For these reasons I respectfully dissent, expressing no opinion as to the merits of the special proceeding reviewed.