STATE of Oklahoma ex rel. Mac Q. WILLIAMSON, Attorney General of Oklahoma; Mac Q. Williamson, John O. Baker and Earl Ward, Trustees; Baylis L. Graham, Earl Ward, and C. D. Mitchell, Administrators with Will Annexed of the Estate of W. A. Graham, Deceased, Petitioners,

v.

Carl W. LONGMIRE, Judge of the County Court of Mayes County, Oklahoma, and Carl Graham, Respondents.

No. 36623.

Supreme Court of Oklahoma.

March 29, 1955.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., Wilkerson & Wilkerson, Pryor, Earl Knight, Tulsa, Harve Langley, Pryor, and Conner, Winters, Randolph & Ballaine, Tulsa, for petitioners.

James A. Rinehart, El Reno, James E. Grigsby, Oklahoma City, Glen D. Johnson, Pryor, and Charles R. Nesbitt, Oklahoma City, for respondent, Carl Graham.

Creekmore Wallace, Pryor, for respondent, Carl W. Longmire.

Looney, Watts, Ross, Looney & Nichols, C. J. Watts, Oklahoma City, for applicant for intervention, Home Indemnity Co.

B. E. Harkey, Oklahoma City, for applicant for intervention, City of Pryor Creek, Okl.

BLACKBIRD, Justice.

The State's Attorney General, the City of Pryor's Mayor, and Mayes County's Treasurer, who appear with the State, and others, as petitioners herein, have been designated in accord with House Bill 883 of the Twenty-Fourth Legislature, Tit. 62, chapter 3, S.L.1953, for the governmental units they serve, as trustees of the residue of the W. A. Graham estate in Probate Cause No. 3661 of the County Court of Mayes County, Oklahoma, wherein said decedent's will was admitted to probate; and his estate, valued at $3,500,000.00, has been administered by Baylis L. Graham, Earl Ward and C. D. Mitchell, the duly appointed co-administrators with the will annexed of said estate. In this original action they instituted by filing their petition therefor, petitioners seek a Writ of Prohibition to prevent the respondent County Judge from taking the action hereinafter more fully described. Carl Graham, one of the testator's nephews, as well as a legatee under the will, has also been named a respondent in said petition. His legacy was the sum of $20,000.

During the course of the administration proceedings Carl Graham and others of the testator's heirs, legatees and/or devisees, took the position that the probate court could validly distribute no portion of said estate to the governmental units above referred to. They asserted this position both in objections made to approval of an instrument filed by the administrators in said Cause 3661, supra, entitled "Supplemental and/or Final Account and Petition for Determination of Heirs, For Payment of Attorneys Fees and Administrators Fees, and For Distribution", in an appeal sought to be taken from the probate court's order referred to as having been entered "January 28–29", 1954, approving said account, in a previous mandamus or prohibition action instituted in this court against Thomas E. Landrum (the then Mayes County Court Judge), and in a Federal suit filed by Carl Graham.

Thereafter, by a contract and agreement between all of the parties advocate of such decree and those objecting to it, evidenced by a pleading filed August 8, 1954, in said probate Cause No. 3661, supra, seeking the Court's approval of such settlement, the legatees and devisees who had made such objections, including those referred to as the "Carl Graham Group", agreed to dis-

952

miss any and all claims and causes of action they had been maintaining, or might have, against said estate, for the sum of $135,000, of which total the Carl Graham Group's pro rata share amounted to $15,000. Said settlement money was to be paid over and above the bequests prescribed for these parties in the will.

By its order entered February 8, 1954, the court gave its approval of said compromise settlement, but, according to facts represented in paragraph 8 of the "Final and/or Supplemental Account and Petition For Determination of Heirs and For Final Settlement, and For Approval of Administrators' Accounts and For Discharge" which was thereafter filed March 2, 1954, such court approval was only tentative, or "subject to final approval" of said court upon its subsequent approval of said final or supplemental account. Thereafter, at a hearing on said final and/or supplemental account, at which all of the parties were represented, the court, on April 7, 1954, by a journal entry approved by all of the parties' attorneys, entered its "Order Approving Final and/or Supplemental Account, Final Settlement, Determination of Heirs, Approval of Administrators' Accounts and Decreeing Final Discharge." In said order, the court specifically referred to the above described compromise agreement theretofore made and submitted to the court for its consideration and approval February 8; and gave its final approval thereto; and ordered the administrators to pay Carl Graham and the other heirs settled with, the above-mentioned $135,000, in addition to their bequests under the will. Thereupon, such payments were made to these parties' attorneys, who transmitted them to their clients, who accepted them. The Carl Graham Group's acceptance is evidenced by a "Receipt and Release" executed by him on their behalf. Notwithstanding this and his receipt of an administrators' check in the amount of $15,000 to pay his Group's pro rata share of the aforesaid settlement total, Carl Graham, without any attempt to appeal from said order under which he had already received the benefit of the testator's $20,000 bequest to him (but had not cashed the above-described administrators' check for the $15,000 additional payment) filed in said Probate Cause No. 3661, supra, on May 13, 1954, an instrument denominated: "Petition to Vacate and Set Aside Final Order and Decree of Distribution, Allowance of Fees, Claims and Expenses, Approval of Supplemental Account and Order Closing dated January 28–29, 1954, And Order Approving Final and/or Supplemental Account, Final Settlement, Determination Of Heirs, Approval Of Administrator's Accounts and Decreeing Final Distribution dated April 7, 1954."

On August 9, 1954, the date scheduled for the hearing of the above-described petition to vacate, the court indicated, by his remarks from the bench at the close of the hearing, that he had concluded that the orders, whose vacation Carl Graham sought, were not final and were invalid, as beyond the court's jurisdiction. He made no order of vacation at that time, however, but continued the hearing until August 23, 1954.

Two days before the latter date, the petitioners filed their "Petition For Writ Of Prohibition", instituting the present action in which they allege, among other things, that the aforesaid County Judge has indicated that on August 23, 1954, he would enter such vacation order on his own motion, and alleging that unless he is prohibited from so doing, he will assume "judicial power not granted (him) by law, to the irreparable injury of petitioners" who are without an adequate legal remedy.

By an "Amended Petition For Writ Of Prohibition" more recently filed herein, petitioners seek an order from this Court temporarily restraining the County Judge from proceeding any further, until further order of this court, with said action he is therein alleged to have taken with reference to removal of two of the administrators and the discharge of the administrators' attorneys. Since the filing of this pleading, the County Judge has filed no pleading or in any other manner answered it or affirmed or denied the allegations set forth therein. He has orally agreed, however, that he will take no further action in regard to such matters

until this Court has acted upon petitioners' application for the writ; and, insofar as we are apprised, he has not. We will, therefore, disregard this amended petition and now consider the motion, incorporated in respondent Carl Graham's demurrer thereto, that this Court dismiss petitioners' application as to him. We think this motion is well taken. Neither petitioners' petition nor amended petition contains any prayer for specific relief against Graham. They ask that the writ be directed solely against the County Judge. No action, either threatened or proposed, of Carl Graham is sought to be prohibited, and in no respect does it state any cause of action against him. Carl Graham's motion to dismiss is therefore sustained.

In view of the above, our continued use of the term "Respondent" will apply only to the County Judge. The jurisdiction petitioners herein seek to "invoke" against him is this Court's power of "superintending control" of all inferior courts, under Art. VII, § 2 of this State's Constitution.

From the transcript filed herein of said respondent's remarks and the colloquy between him and counsel which occurred at the hearing last August, it appears reasonably certain, and it seems to be agreed between the parties, that he was about to, and intends to, set aside his own court's order of April 7th, 1954, on his own motion, rather than upon the petition to vacate, filed on behalf of Carl Graham, as aforesaid. The only reason specifically revealed in said transcript for the judge's belief that the order was void was that although it purported to order distribution of the estate, or at least a majority of it, it was his opinion the order or decree showed on its face that the estate's tax liability had not been finally determined. The following findings contained in the order in controversy reveal what the true situation was with reference to payment of such taxes and also reveals why the Court did not thereby purport to close the administration proceedings, but specifically retained jurisdiction to make further orders therein, at least insofar as the residue was concerned:

"5. That the administrators have paid all State, county, school and municipal taxes levied upon personal property of the estate, including intangible taxes, and have made returns and paid all State and Federal income and estate taxes assessable against them or against said estate and have presented evidence to the court showing the full payment of all such taxes.

\* \* \* \* \* \*

"14. That under date of December 10, 1953, the Oklahoma Tax Commission, upon an audit of the estate tax return, filed by said administrators with said Oklahoma Tax Commission, made an assessment against the administrators and said estate in the additional principal amount of $219,931.35, *which additional assessment* together with interest thereon *has been paid* by said administrators under protest; also under said date of December 10, 1953, the Oklahoma Tax Commission, upon audit, made an additional assessment against the administrators and said estate as additional gift taxes due to said Oklahoma Tax Commission in the amount of $21,018.69, *which amount has been paid* under protest; that the administrators have filed in the Supreme Court of the State of Oklahoma, as provided by law, an appeal from the said orders of the Oklahoma Tax Commission assessing such additional taxes, which appeal said administrators intend to prosecute to a conclusion in the expectation of recovering substantial amounts of the taxes so paid for the benefit of the estate, which action of the administrators should be approved.

\* \* \* \* \* \*

"21. That all tax returns heretofore filed by the administrators on behalf of said estate have not been fully and finally audited and that *final clearance and releases with respect to all tax returns have not been received* by the administrators; that the administrators will incur some additional expense in effecting final distribution and closing up of the estate and *may be required upon final audit to pay some additional taxes;* that pending the final

audit, clearances and receipts as to all such tax returns being received, to pay final expenses in effecting distribution and closing the estate, the administrators should retain in their hands cash and/or bonds at par value aggregating the total sum of $100,000.00 to cover final expenses of distribution, payment of additional taxes, if any, and to protect them against additional tax or other possible liability and conduct the business of the estate under the orders of and until further order of·the court."

 In determining whether or not the Respondent Judge or Court has jurisdiction to set aside the decree of April 7th, 1954, as a void one because of its showing as to the status of the estate's inheritance and gift tax liability, it is appropriate first to consider Tit. 68 O.S.1951 § 989s, the last paragraph of which reads as follows:

"The allowance of any final account or order of distribution and discharge of the administrator, executor, trustee and their bondsmen *shall be invalid as against the State and shall be set aside upon application of the Tax Commission unless the tax due under this Act has been paid in full;* and ·such administrator, executor, trustee, or transferee for such tax *shall exhibit the receipt of the Tax Commission to the county court before said court shall make a final or· partial distribution of the estate."* (Emphasis ours.)

We think the decree hereinbefore quoted contains a sufficient showing of payment of the Graham Estate's tax liability to the Tax Commission to authorize the court to make the distribution it purported by said order to direct. It will be observed that therein the Court found that the maximum sums claimed by the Commission had been paid, event though it also recognized the possibility of an adjustment or change in these sums upon final determination of the estate's tax liability, and contained appropriate directions for dealing with said possibility when, as and if, it became an accomplished fact. The provisions made in said decree appear altogether reasonable

and wholly adequate to protect the Tax Commission as well as the administrators, in their claims, no matter what the final result was; and there is no assertion to the contrary. In view of this, we cannot see how or why the degree of uncertainty which existed here with reference to such tax liability should constitute any obstacle to the decree's finality as to other matters about which it purported to have finality. It will be noted that the above-quoted statute specifically mentions the State as the only entity as to which the order of distribution shall be invalid and the Tax Commission as the only one that may apply to have it set aside if the tax due under the Act has not been paid in full. It specifies no one other than this governmental unit and/or agency as to whom the order may be deemed invalid, and gives no other party the right to apply for its vacation. Nor does the statute render it necessary for the one or more representatives of the estate to exhibit a *final release* from the Tax Commission of · the estate's tax liability before any of the testator's bequests or devises may be finally distributed. It says only that the Tax Commission's "receipt" shall be exhibited, and we may reasonably assume from the court's investigation indicated by, and its findings contained in, the decree in question that the administrators exhibited receipts from the Tax Commission in acknowledgment of, and as proof of, its receipt of the maximum amounts claimed by the Commission, which amounts the court found had been paid to it. It will also be noted from the decree or order that. the Court did not thereby discharge the administrators; and it is difficult to conceive how the Court, by said order, could have taken any more precaution than it did to see that all interested parties would be protected upon final determination of the tax liability—and none is suggested, short of refusing any distribution· whatsoever. We think the latter course was unnecessary and uncalled for, under the circumstances and in view of the provisions contained in the Order. In view of ·the vastness and variety of the estate and the more or less complex questions that might conceivably arise in the

course of determining its liability for the two kinds of taxes mentioned in the Order, an extended period of time may be required to obtain a final determination thereof. We cannot see why such possibility should prevent final distribution of a majority of the corpus of the estate ·where there are valid reasons for such distribution and where adequate precautions are taken against the estate escaping any of its tax liability, as has apparently been done here; and we do not think that the Legislature in enacting the above-quoted section intended that it should. To so interpret the statute would give it an inflexibility, with possible grave consequences both to the estate and its legatees and/or devisees, that we cannot believe was ever intended for said law. The intention of the Legislature in enacting any law must be presumed to benefit, not to injure, those interested in its subject. Harris v. Bell, 10 Cir., 250 F. 209, 162 C.C.A. 345, and where to give a statute its literal meaning would make it operate impractically or absurdly, it must be presumed that the Legislature did not contemplate such consequences, and, if possible, a construction must be given it that will avoid such results. See Brown v. State Election Board, 197 Okl. 169, 170 P.2d 200; Taylor v. Langley, 188 Okl. 646, 112 P.2d 411. In view of the foregoing we conclude that the Order of April 7th, 1954, was not invalid or void on the only specific ground mentioned by the Respondent Judge at the aforesaid hearing.

 We do not pass upon other assignments of invalidity mentioned in the motion to vacate of Carl Graham (as to whom the present action has been dismissed) as to which the respondent judge has expressed no opinion nor in any manner passed upon; and are not properly before us. The transcript of the respondent judge's remarks showing his intention to vacate said order because it shows the taxes have not been paid negatives any assumption that he regarded the matter as discretionary but affirmatively indicates his belief that the court had no jurisdiction to make such an order and that under previous decisions of this Court (which he did not name or cite) he could do nothing but

set it aside. We think the rule that in such a situation the Supreme Court ordinarily considers only the specific ground upon which said Judge arrived at his conclusion. Northern Pac. R. Co. v. Jurgenson, 25 N.D. 14, 141 N.W. 70; 73 C.J.S., Prohibition, § 44, p. 127, Note 99, applies particularly to a case like this one, which is not an appeal from any general order or judgment, and the judge's threatened action is based upon his own motion, rather than that of any of the parties, upon which he has in no manner passed nor indicated any disposition to do so. In this connection notice Bunch v. Humphreys, 174 Okl. 206, 50 P.2d 337. And the general rule requiring affirmance of the trial court's judgment, if it is correct on any theory, see Douglas v. Douglas, 176 Okl. 378, 56 P.2d 362, and other cases digested in 2A Okl.Digest, Appeal and Error, does not apply.

 This leaves for decision only the question of whether or not the remedy of prohibition can properly be granted in a case like the present one. Respondent says such remedy is available only to prevent an inferior court from acting without jurisdiction or beyond its jurisdiction. Bearing in mind the conclusion we have already announced herein that the Order and Decree of April 7, 1954, is not void on its face under Tit. 68 O.S.1951 § 989s, for the reason given by the Respondent Judge, we think all further question as to the soundness of petitioner's contention that a county court, in such probate proceedings, does not possess the inherent power of courts of record in causes of equitable cognizance, and can vacate its judgments only in the manner and for one or more of the causes provided in our judgment vacation statutes, Tit. 12 O.S.1951 § 1031 et seq.—which the Respondent has not done or announced any intention of doing—is settled by Tit. 58 O.S.1951 § 632, which provides that decrees like the present one are conclusive "as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal", and by In re Hicks' Estate, 189 Okl. 310, 116 P.2d 905, 906, in which we held:

"After a final decree of distribution has been entered in a probate proceed-

ing the county court is without jurisdiction to make any order affecting the property so distributed, except such as may be necessary to compel compliance with the decree of distribution, unless and until such decree is reversed or modified on appeal or set aside by a proper proceeding."

See also Ozark Oil Co. v. Berryhill, 43 Okl. 523, 143 P. 173, and 21 C.J.S., Courts, § 301. In view of the above, we think it is clear that the respondent is without jurisdiction to set aside or vacate the Order of April 7th, 1954, in the manner he proposes.

■ Respondent contends petitioners are not entitled to the remedy of a writ of prohibition for the further reason that they have an adequate remedy at law by appealing from any order he may hereafter enter setting aside the decree of distribution. We have held that in cases where the inferior tribunal is assuming judicial power not granted by law, inadequacy of a remedy at law is not a necessary prerequisite, if such remedy does not appear *equally* adequate and convenient. State ex rel. Burford v. Sullivan, 86 Okl.Cr. 364, 193 P.2d 594; Blue v. Murray, Okl., 260 P.2d 1069. And, as a general rule, a decision as to the matter depends upon the facts and circumstances in each particular case. Kedney v. Hooker, 144 Okl. 148, 289 P. 1108, 136 A.L.R. 719, citing 22 R.C.L. 11, "Prohibition", sec. 9; 42 Am.Jur., "Prohibition", sec. 9. Here, if the respondent judge were allowed, without hinderance, to set aside the decree of distribution on his own motion, such action could quite conceivably jeopardize the work of the administrators and many others contemplated to settle valuable property rights already vested in the many heirs and claimants, and whose enjoyment should not be further delayed, save for the most impelling and judicious reasons. See 42 Am.Jur., supra, sec. 9. If said order and the preliminary one of January 29, 1954, be summarily nullified as the respondent has indicated he will do, then many acts of the administrators involving the disbursement of many thousands of dollars of the estate's funds pursuant thereto and in reliance thereon, may quite conceivably be challenged and

said administrators subjected to removal proceedings and potential liability on their bonds, some of which proceedings have, since the original application was filed herein, already commenced, according to allegations contained in the amended petition for the writ. Upon consideration of the situation herein in all of its various aspects and the grave consequences which might easily result from a refusal by this court to grant the writ sought, such as a multiplicity of other litigation not only in this court but others as well, with its attendant expense and delay and further depletion of the assets of the estate, we think our discretionary power to grant the writ should be exercised. This court has previously granted such writs to prevent action by lower courts upon probate matters in excess of their jurisdiction where the consequences of our refusal to act could have been no more far-reaching nor have worked any greater hardship, inconvenience, expense, delay and/or litigation than might result from such refusal here. See, for instance, Martin v. O'Reilly, 81 Okl. 261, 200 P. 687; Camp v. Crump, 159 Okl. 259, 15 P.2d 47.

In view of our determination of this matter between the original parties to this action, the application for leave to intervene heretofore filed herein on behalf of Home Indemnity Company, surety upon the administrators' bonds of Baylis L. Graham and Earl Ward, and another such application filed purportedly on behalf of the City of Pryor, is hereby denied.

In accord with the views herein expressed, the respondent County Judge and/or Court is hereby prohibited from vacating, in the manner and for the reason he proposes, the order entered in said Court on April 7, 1954, entitled: "Order Approving Final and/or Supplemental Account, Final Settlement, Determination Of Heirs, Approval of Administrators' Accounts and Decreeing Final Distribution."

JOHNSON, C. J., and DAVISON, HALLEY and JACKSON, JJ., concur.

WELCH, J., WILLIAMS, V. C. J., and CORN, J., dissent.

WELCH, Justice (dissenting).

The majority opinion only passes upon one question, and that is to decide that the decree of April 7, 1954, is not rendered void on its face by the tax point involved, or that the County Judge cannot vacate the decree for that cause on his own motion. While such a determination might be correct as to that one item, I do not believe the opinion goes far enough. I think we should determine several other questions or decline to assume original jurisdiction at all.

The majority opinion does not construe the statute, Title 62, Chapter 3, S.L.1953, or in any manner pass upon it, or upon its validity, or its effectiveness or applicability to this estate; nor decide any other question relating to the form or effectiveness or validity of the decree of April 7, 1954, or whether it might be void for any other reason. These and other questions are presented or tendered and I think we should consider them if we assume original jurisdiction in the cause. It seems to me that the majority opinion dealing only with the one minor point does not render much service in deciding the several questions and problems involved in the settlement of this estate. Therefore I respectfully dissent.