Attorney General Loving has received your letter requesting an official Attorney General Opinion addressing, in effect, the following questions:
 1. Under 74 O.S. 917(7) (1993), is Delaware County responsible for remitting payment to the Oklahoma Public Employees Retirement System for any retirement contributions that the County failed to remit on behalf of one of its full-time employees for a twenty-two (22) month period in 1970 — 1972, so as to allow the county employee early retirement?
 2. Assuming that Delaware County is responsible for said remittance, and pays OPERS the necessary statutory cost for the neglected first twenty-two (22) months of the county employee's participating service, can OPERS credit the employee with having made additional contributions to OPERS so that she may receive an additional "bonus" year of participating service pursuant to 74 O.S. 913(2)(f) (1993)?
 3. Assuming that Delaware County pays OPERS the statutory cost for the neglected first twenty-two (22) months of the county employee's participating service and assuming that the county employee is entitled to an additional "bonus" year of service credit pursuant to 74 O.S. 913(2)(f) (1991), is Delaware County also responsible for paying the actuarial cost for said "bonus" year under 74 O.S. 913.5(A) (1993)?
Because your questions require a consideration of specific facts and may be answered by reference to controlling statutes and case law, the issuance of a formal opinion of the Attorney General is neither desirable nor necessary. The discussion which follows is, therefore, not an official opinion of the Attorney General; it represents, rather, the analysis and conclusions of the undersigned Assistant Attorney General.
A. Factual History
Delaware County joined the Oklahoma Public Employees Retirement System ("OPERS") in January, 1968. For a twenty-two (22) month period from September 1, 1970, through June 30, 1972, Delaware County failed to deduct a 4% retirement contribution from the $400.00 monthly salary of one of its full-time county employees and remit the same to OPERS as required by 74 O.S. 919 (1971). The total amount of the employee's share of retirement contributions which Delaware County failed to remit to OPERS during the twenty-two (22) month period totalled $ 352.00. During that same time period, Delaware County also failed to remit its statutorily required share of retirement contributions to OPERS for the same county employee as required by 74 O.S. 920 (1971).
Commencing July 1, 1972, and continuing until the present, Delaware County has properly remitted both the employee's and its statutory share of retirement contributions to OPERS. Specifically, and pertinent to your opinion request, from July 1, 1972, through June 30, 1977, Delaware County remitted $394.03 in employee's contributions to OPERS which resulted in OPERS granting the employee one (1) additional "bonus" year of participating service credit pursuant to Section 74 o.s. 913(2)(f) of Title 74.
The affected Delaware County employee now desires to take an early retirement based upon her total years of participating service under the applicable OPERS statutes. To assist the employee in meeting this end, OPERS has invoiced Delaware County for the current statutory cost of the neglected twenty-two (22) months of retirement contributions as well as the cost for a second "bonus" year under Section 74 o.s. 913(2)(f). The parties agree that the county employee is not eligible for early retirement without the inclusion of the aforementioned thirty-four (34) months of participating service credited to her OPERS retirement records.
The cost contained within the invoice from OPERS to Delaware County for the twenty-two (22) months of neglected retirement contributions and the second "bonus" year described above, total $27,483.56. As set forth below, OPERS has based its invoiced calculations upon the "actuarial cost" provisions found within 74 O.S. 913.5 (1993). Only upon full receipt of this amount from Delaware County will OPERS credit the participating service to the county employee's records and allow the employee to commence early retirement.
B. Discussion and Analysis
Your first question asks whether Delaware County is responsible to pay OPERS the retirement contributions that the county failed to remit on behalf of the county employee at issue pursuant to 74 O.S. 917(7) (1993), so as to allow the county employee the opportunity to take an early retirement. In order to properly respond to this inquiry, it will be necessary to examine the relevant provisions of the Oklahoma Public Employees Retirement System Act (the "Act"), 74 O.S. 901 et seq., specifically 74 O.S. 917(7) (1993).
Title 74 O.S. 917(7) (1993) specifically addresses the issue posed in your first question. Section 917(7) provides:
 "When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error to pay the amount determined by the Board pursuant to Section 74 o.s. 913.5 of this title."
(Emphasis added.)
In construing a statute, the cardinal rule is to ascertain the intent of the Legislature by considering the language of the statute as a whole in light of its general purpose and objective. See Wood v. Independent School District No. 141 of Pottawatomie County, 661 P.2d 892 (Okla. 1983). Where the intent of the Legislature is plainly expressed in the statute, it must be followed without further inquiry or statutory construction. See, g., In re Request of Hamm Production Co., 671 P.2d 50, 52 (Okla. 1983); Hughes Drilling Co. v. Morgan, 648 P.2d 32, 35 (Okla. 1982).
In the instant case, the facts and applicable law reflect that Delaware County constitutes a "participating employer" pursuant to 74 O.S. 917(7) (1991). The record and applicable law also establish that the county employee in this case constituted an eligible "employee" for purpose of coverage by OPERS. The facts reflect that the county employee was employed on full-time basis by Delaware County during the twenty-two (22) months in question with a salary of $400.00 per month. During the time period in question, the OPERS statutes provided that "any employee of a participating employer on the entry date of such employer shall be a member of the system on the entry date." 74 O.S. 911 (1970). The OPERS statutes further provided that "employee" constituted:
 "any officer or employee of a participating employer, whose employment is not seasonal or temporary and whose employment requires at least one thousand (1000) hours of work per year and whose salary or wages is at least Ninety Dollars ($90.00) per month." 74 O.S. 902(15) (1970).
In the construction of statutes, "shall" is usually given its common meaning of "must". It is interpreted as employing a command or mandate. Sneed v. Sneed, 585 P.2d 1363 (Okla. 1978). Thus, because the county employee at issue was a full-time employee of a "participating employer" under the OPERS statutes, and was drawing a salary of $400.00 per month, that employee's membership in OPERS was mandatory as of the date the county joined OPERS in 1968.
It is my belief that the Legislature clearly expressed its intent regarding the issue contained within your first question when it enacted 74 O.S. 917(7) (1993). Section 917(7) plainly mandates that any participating employer, such as Delaware County, that makes an error regarding a prior or current employee's participation coverage in OPERS must pay the amount determined by the OPERS Board to correct the error.
In this case, Delaware County, as an OPERS participating employer, erroneously failed to withhold and remit the county employee's retirement contribution share as well as its own contribution share for a twenty-two (22) month period during which the county employee's membership in OPERS was mandated by statute. As a result, the County erroneously denied the county employee coverage in OPERS for that same time period.
Therefore, in answer to your first question, it is the opinion of the undersigned that 74 O.S. 917(7) (1993) mandates that Delaware County is responsible to pay OPERS the required statutory amount of retirement contributions in order to correct the above-described contribution errors committed by the county regarding this employee's membership with OPERS.
II.
Subsection (2) of 74 O.S. 913(2) provides the statutory mechanism by which OPERS is mandated to credit its members' "participating service" or that "period of employment after the entry date for which credit is granted a "member". See, 74 O.S. 902(26) (1991). Specifically, Section 74 o.s. 913(2)(f) of Title 74 provides in pertinent part:
"(2) Participating service shall be credited as follows:
. . .
 (f) Provided, however, that all employee contributions required by this act made by employees prior to June 30, 1977, will entitle the employee to additional year s of participating service in accordance with the following schedule:
Employee accumulated contributions:
 More than $ 1.00 up to $500 = 1 year participating service More than $500 up to $1,000 = 2 years participating service
More than $1,000 up to $1,500 = 3 years participating service
More than $1 500 up to $2,000 = 4 years participating service
More than $2 000 = 5 years participating service
In no event shall the employee be entitled to more than five (5) additional years of participating service as provided hereunder . . .
(Emphasis added.)
In this matter, Delaware County failed to withhold and remit the affected county employee's $352.00 share of retirement contributions to OPERS from September 1, 1970, through June 30, 1972. Subsequently, the county employee contributed a total of $394.00 to OPERS for the period of July 1, 1972 through June 30, 1977. For the latter five years of contributions, OPERS has granted the employee one (1) additional "bonus" year of participating service credit pursuant to Section 74 o.s. 913(2)(f) of Title 74.
Assuming Delaware County proceeds with paying OPERS the necessary statutory cost for the neglected first twenty-two (22) months of the county employee's participating service, the question arises as to whether the employee can be credited with having made the additional $352.00 in contributions to OPERS so that she may receive an additional "bonus" year of participating service pursuant to 74 O.S. 913(2)(f) (1993). While the OPERS statutes do not specifically address this question, it is my opinion that a construction of the pertinent OPERS statutes provides that in such a situation, the Legislature intended that an eligible employee be credited with the additional contributions so as to enable that employee to receive any additional years of participating service for which he or she may qualify under Section 74 o.s. 913(2)(f).
Generally, the determination of legislative intent controls the statutory interpretation and such intent is ascertained from the whole act in light of its general purpose and objective. See Smicklas v. Spitz, 846 P.2d 362 (Okla. 1992). Also, the intention of the legislature in enacting any law must be presumed to benefit, not injure those interested in its subject. State ex rel. Williamson v. Longmire,281 P.2d 949 (Okla. 1955). That which is within the reason, purpose and intention of a statute is as much a part of it as if it were within the letter of the legislative act. Bell v. United Farm Agency Inc., 296 P.2d 149 (Okla. 1956). Finally, a statute should be given a sensible construction, bearing in mind the evils to be avoided or the remedy afforded. Samson Resources Co. v. Cloud, 812 P.2d 1378 (Okl.App. 1991).
In the present situation, the affected county employee failed to make her share of the statutorily required retirement contributions to OPERS for the twenty-two (22) month period at issue only because of Delaware County's oversight. Had the county properly enrolled the employee in OPERS and properly remitted the employee's share of retirement contributions as required by statute, the employee would have made an additional $352.00 in contributions from September 1, 1970, through June 30, 1972.
Per its statutes, OPERS' only remedy to correct the county's error is to require that Delaware County pay the present value of the affected employee's neglected twenty-two (22) months of service based upon the current actuarial cost as prescribed in 74 O.S. 913.5 (1993). Upon Delaware County's payment of this statutory cost to OPERS, it is my opinion that the Legislature intended that OPERS credit the county employee with the $352.00 in contributions that the employee would have remitted had it not been for Delaware County's oversight. Such an additional contribution credit would amend the county employee's pre-June 30, 1977, accumulated contribution total to $743.03 and entitle the employee to receive a second additional "bonus" year under Section 74 o.s. 913(2)(f).
Such a construction of the OPERS statutes would properly reflect the purpose and objective of the Legislature in enacting Section 913(2)(f), which was to afford all eligible OPERS members with additional years of participating service credit based upon the total amount of accumulated retirement contributions made prior to June 30, 1977. To construe the OPERS statutes otherwise would effectively penalize the county employee in this matter for a mistake which was not her own, rather than to afford her the same available benefits in Section 74 o.s. 913(2)(f) which she would have realized had it not been for the county's oversight. See Longmire, supra.
Therefore, in answer to your second question, it is my opinion that upon Delaware County's payment of the necessary statutory costs to OPERS for the twenty-two (22) months of neglected service participation, the county employee at issue will be entitled to a second additional service credit or "bonus" years pursuant to 74 O.S. 913(2)(f) (1991)
III.
Your third question requires an assumption that Delaware County pays OPERS the statutory cost for the neglected first twenty-two (22) months of the county employee's participating service and that the county employee is entitled to an additional "bonus" year of service credit pursuant to 74 O.S. 913(2)(f) (1991). Based upon these assumptions, you inquire whether Delaware County is also responsible for paying OPERS the actuarial cost for said "bonus" year under 74 O.S. 913.5(A) (1993).
As cited earlier, 74 O.S. 917(7) (1993) requires that Delaware County pay OPERS "the amount determined by the Board pursuant to Section 74 o.s. 913.5 of (Title 74)" for its errors regarding the county employee's participation coverage with OPERS. Section 74 o.s. 913.5(A) provides the statutory mechanism for computing the purchase price of participating service years in OPERS. This mechanism was amended from a contribution cost plus interest basis to an "actuarial cost" basis when Section 74 o.s. 913.5 was amended by the Legislature in 1990. The actuarial cost method calculates the price of any service credits to be purchased from OPERS based upon the present value of the "incremental projected benefits discounted according to the member's age at the time of purchase". Section 74 o.s. 913.5(A) defines "incremental projected benefits" as:
 "(T)he difference between the projected benefit said member would receive without purchasing the service credit and the projected benefit after purchase of the service credit computed as of the earliest age at which the member would be able to retire. Said computation shall assume an unreduced benefit and be computed using interest and mortality assumptions consistent with the actuarial assumptions adopted by the Board of Trustees for the purposes of the preparing the annual actuarial evaluation."
From a review of Section 74 o.s. 913.5(A), it is evident that the actuarial cost method of calculating service credit purchase price bears no relationship to the monthly salary or retirement contribution level at the time of service of the OPERS' member desiring to purchase said service credits with OPERS. Instead, it is my opinion that the Legislature intended for actuarial cost to directly relate to the present actual cost to OPERS to provide future statutory retirement benefits for the requested period of service. It also compensates OPERS for the loss of any interest or investment earnings that the system might experience as a result of not receiving contemporaneous contributions for any service credits requested to be purchased.
In the present situation, the OPERS Board of Trustees, pursuant to its authority in 74 O.S. 917(7) (1991), has invoiced Delaware County for the Section 913.5(A) actuarial cost of the county employee's twenty-two (22) months of neglected service and also for the actuarial cost of the second "bonus" year for a total of $27,483.56. Without specifically detailing the Board's calculations, this total can be broken down so as to show that the separate actuarial cost for the twenty-two (22) months of neglected service is $17,452.66.
Section 74 o.s. 913.5(A) of Title 74 provides the OPERS Board of Trustees the statutory authority to "adopt rules for the computation of the purchase price for service credit." (Emphasis added). Section 74 o.s. 913.5(A) further provides that "these rules shall base the purchase price for each year purchased on the actuarial cost of the incremental projected benefits to be purchased". Id. (Emphasis added). Generally, the OPERS statutes specifically provide which eligible service credit years are subject to purchase pursuant to Section 913.5(A). For example, Section 74 o.s. 913(1)(g) of Title 74 expressly provides that those OPERS members who did not receive credit in any other retirement system for service rendered with a participating employer prior to January 1, 1975, shall receive service credit in OPERS by paying the amount determined by the Board pursuant to Section 74 o.s. 913.5. Section 74 o.s. 913(g)(4) and 913(g)(5) respectively provide that OPERS members who accumulated service years as members of other state retirement systems or elected officials may receive credit in OPERS if the members are not receiving or eligible to receive credits or benefits in any other public retirement system and they pay the amount determined by the Board pursuant to Section 74 o.s. 913.5.
However, for purposes of receiving additional years of participating service credit under 74 O.S. 913(2)(f) (1991), the statute has always specifically required that a qualified employee be "entitle(d)" to such credit be based upon an employee's "accumulated contributions" as an eligible employee prior to June 30, 1977. Id. "Entitle" is defined as "to give a right or legal title to . . . to qualify for". Black's Law Dictionary 477 (5th Ed. 1979). Thus, through Section 74 o.s. 913(2)(f), the Legislature granted OPERS' members the legal right/legal title to receive additional or "bonus" years of participating service credit solely by virtue of those members making certain amounts of retirement contributions before a certain date.
Unlike the express requirement provided for in Sections 913(1)(g), 74 o.s. 913(g)(4) and 74 o.s. 913(g)(5) of Title 74 that OPERS members eligible for certain service credits purchase the credit for an amount determined by the Board under Section 74 o.s. 913.5, there is no requirement in Section 74 o.s. 913(2)(f) that OPERS members purchase additional service credits after meeting the prescribed statutory requirements. Because an eligible qualified OPERS member is not required to purchase the additional service years under Section 74 o.s. 913(2)(f), but instead is given a legal right or entitlement to receive those years, the actuarial cost requirements in Section 74 o.s. 913.5 bear no applicability or relevancy regardless of the fiscal year in which OPERS actually recognizes and credits the additional "bonus" year.
In the present situation, had Delaware County properly withheld and remitted the county employee's share of retirement contributions to OPERS from September 1, 1970, through June 30, 1972, OPERS would have undoubtedly credited the county employee with two (2) additional years of participating service credit under the former versions of 74 O.S. 913(2)(f). OPERS did not have the statutory authority to require that the county employee purchase the additional service credits at that time under OPERS' former contribution plus interest method of purchasing, nor does it possess such authority today by virtue of Section 74 o.s. 913.5(A). It would work a severe penalty upon both the employee and Delaware County if the county was required to presently pay any cost to OPERS for a benefit which the employee is and should have always been entitled to from the State of Oklahoma.
Thus, in answer to your third question, it is the opinion of the undersigned attorney that Delaware County is only responsible for a payment of $17,452.66 to OPERS for the twenty-two (22) months of neglected service participation pursuant to 74 O.S. 913.5(A) (1993) and 74 o.s. 917(7). In that the county employee at issue will be entitled to a second additional service credit or "bonus" year from OPERS pursuant to 74 O.S. 913(2)(f) (1991) after Delaware County's payment of the $17,452.66 to OPERS, it is further my opinion that OPERS is without the statutory authority to require Delaware County to purchase the additional "bonus" year of service credit for actuarial or any cost.
In sum, for the above-stated reasons, it is the opinion of the undersigned counsel, that:
 1. Title 74 o.s. 917(7) expressly mandates that Delaware County is responsible to pay OPERS the required statutory amount of retirement contributions in order to correct the above-described contribution errors committed by the County regarding its county employee's membership with OPERS.
 2. Upon Delaware County's payment of the necessary statutory costs to OPERS for the twenty-two (22) months of neglected service participation, the county employee at issue will be entitled to a second additional service credit or "bonus" years pursuant to 74 O.S. 913(2)(f) (1991).
 3. Delaware County is only responsible for a payment of $17,452.66 to OPERS for the twenty-two (22) months of neglected service participation pursuant to 74 O.S. 913.5(A) and 74 o.s. 917(7) (1993). Further, in that the county employee at issue will be entitled to a second additional service credit or "bonus" year from OPERS pursuant to 74 O.S. 913(2)(f) (1991) after Delaware County's payment of the $17,452.66 to OPERS, OPERS is without the statutory authority to require Delaware County to purchase the additional "bonus" year of service credit for actuarial or any cost.
(Barry K. Koonce)