1999 OK CIV APP 77

**Dana M. HARDY, Plaintiff/Appellant,**

v.

**Kevin BEZDICEK and the University of Central Oklahoma, Defendants/Appellees.**

No. 91,489.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 26, 1999.

Rehearing Denied July 9, 1999.

Mikel W. Flores, Mikel Flores and Associates, P.C., Oklahoma City, Oklahoma, For Plaintiff/Appellant.

Charles K. Babb, Assistant Attorney General, Oklahoma City, Oklahoma, For Defendants/Appellees.

OPINION

ADAMS, Judge:

¶1 On January 24, 1997, Kevin Bezdicek drove a vehicle into the rear end of car driven by Dana Hardy. According to Hardy,

Bezdicek's vehicle was a "University Security car." It is undisputed that Bezdicek was an employee of the University of Central Oklahoma (UCO) on that date. Hardy sued UCO and Bezdicek for injuries allegedly sustained in this incident. The trial court sustained motions for summary judgment by both UCO and Bezdicek, and Hardy appeals the judgment entered in their favor denying her claim.

¶ 2 In addressing Hardy's claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and UCO and Bezdicek were entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Hardy. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

## I. UCO'S JUDGMENT

■ ¶ 3 UCO based its summary judgment motion on the contention that Hardy's claim was time-barred by the provisions of the Oklahoma Governmental Tort Claims Act (the Act), 51 O.S.1991 § 151, *et seq.* Hardy filed a Claimant's Report on May 6, 1997. In that report, she listed a specific sum she claimed as property damage. She described her personal injury damages as "pending." She and UCO settled on the amount of her property damages, and a release was executed on June 9, 1997. On January 20, 1998, Hardy made a written demand for payment for personal injuries sustained in the accident. Hardy filed this lawsuit on February 4, 1998.

¶ 4 According to UCO, because all of the damages claimed in the May 6, 1997 report were not approved in their entirety, her personal injury claim against UCO was deemed denied on August 4, 1997, citing 51 O.S.1991 § 157. Under § 157, after her claim was deemed denied, Hardy had one hundred eighty days to file a lawsuit. UCO argued this action was filed beyond that time limit and therefore was time-barred.

¶ 5 Hardy characterized the May 6, 1997 report as her "property damage claim," and stated that the parties understood it as such. Hardy argued that while case law may require her to "press all of her different theories of recovery in a single lawsuit" it did not require her to press all her claims at once prior to trial. She argued that language in the Act referring to "claims" is an indication the Legislature recognized that a party may have more than one claim. However, her approach would render nugatory the portions of 51 O.S.Supp.1995 § 157(A), which provide that "[a] person may not initiate a suit against the state or a political subdivision unless the claim has been *denied in whole or in part*" (emphasis added), and that "[a] claim is deemed denied if the state or political subdivision fails to approve the claim *in its entirety* within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period." (Emphasis added.)

¶ 6 By operation of law, any portion of her claim not extended by a specific written agreement was denied 90 days later, in August of 1997. Clearly, the May 6, 1997 Claimant's Report Hardy filed put UCO on notice that she had sustained damages for personal injuries from the January 24, 1997 accident, although she did not quantify the amount of damages. Hardy sent a cover letter, dated May 2, 1997, to UCO stating that she is "filing only the property damage at this time," but in that same letter she also states she is enclosing an emergency room bill.

¶ 7 Hardy points to the June 9, 1997 release as further evidence that the parties treated the May 6, 1997 report as a property damage claim. While the release does indeed state that it is for property damage, it was executed prior to the expiration of the 90–day period and its terms do not mention,

let alone reserve, exempt, or extend any claim for any other type of damages.

¶ 8 Under § 157(A) a "claimant and the state or political subdivision may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial *unless agreed to in writing* by the claimant and the state or political subdivision" (emphasis added), and under 51 O.S.Supp.1995 § 157(B) a "claimant and the state or political subdivision may *agree in writing* to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim." (Emphasis added.) Hardy provides no writing indicating UCO explicitly agreed to an extension of the limitations period. The June 9, 1997 release of her property damage claim does not hint at, suggest, or otherwise address any claims for other types of damages or any agreement about any such damages. We conclude that it does not provide the agreement "in writing" § 157(B) requires.

■ ¶ 9 Further, 51 O.S.Supp.1992 § 156(E) provides that written notice of a claim which fails to state the "amount of compensation" claimed is not invalid notice unless the injured party declines or refuses to furnish such information after demand. Hardy argues that the scope of damages which it covered by the May 6, 1997 notice was limited, not that it was invalid notice.[1] Applying § 156(E), we must conclude that, though the amount of compensation Hardy claims was not listed, the May 6, 1997 notice was valid notice she claimed both personal injury and property damage as a result of the January 24, 1997 incident. Her claim was not approved "in its entirety" within ninety days, and therefore suit against UCO was filed too late. The trial court did not err in entering judgment for UCO.

## II. BEZDICEK'S JUDGMENT

■ ¶ 10 Hardy argues summary adjudication in favor of Bezdicek was not proper

because she alleged he acted in a "reckless" and "wilful" manner. According to Bezdicek, this removed him from the scope of his employment.[2] In his motion for summary judgment, Bezdicek did not address Hardy's allegations that his actions were grossly negligent, willful or wanton. The appellate record does not contain any reply addressing these issues. Instead, in his motion Bezdicek claimed he lacked the capacity to be named as an individual defendant, citing 51 O.S.1991 § 163(C). Indeed, a relevant portion of § 163(C) does state that "[i]n no instance shall an employee of the state or political subdivision *acting within the scope of his employment* be named as defendant" under the Act. (Emphasis added.)

¶ 11 The Act provides that persons including those "acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis," 51 O.S.1991 § 152(5), are employees, while in 51 O.S.1991 § 152(9), "scope of employment" is defined as:

> performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

Thus, § 163(C) requires an employee to be acting within the scope of employment and § 152(9) requires the performance of duties or tasks for the protections of the Act to apply.

¶ 12 In his motion, Bezdicek made the conclusory statement that he was engaged in the course and scope of his employment. The only evidence he submitted, an affidavit from the director of human resources for UCO, states only that he was a student employee of UCO on January 24, 1997. Bezdicek does not offer any evidence he was acting

---

1. None of the parties claim there were any demands for and/or refusals of further information about Hardy's personal injuries. The record only indicates that a sum was not given in the May 6, 1997 Claimant's Report and Hardy made a demand for a certain sum for personal injury damages on January 20, 1998.

2. This allegation is inconsistent with Hardy's remaining allegation that UCO was responsible for her injuries under the doctrine of *respondeat superior*, but she was entitled to plead alternatively.

within the scope and course of his employment when he encountered Hardy. Although it is undisputed Bezdicek was driving at the time Hardy's vehicle was struck, nothing in this record states anything about his tasks or duties at that time.

¶ 13 For the protections of the Act to apply and for judgment to be entered in his favor on this basis, Bezdicek needed to show that he was an employee acting within the scope of his employment. He did not make this required showing. Further, Hardy's petition claims Bezdicek acted willfully, recklessly and/or negligently. He did not offer any argument or evidence demonstrating he was entitled to judgment on these claims.[3] Taking, as we must, all inferences in the materials in favor of the party opposing the motion for summary adjudication, on the record transmitted on appeal it does not appear that Bezdicek has demonstrated that there is no genuine issue as to material facts and he was entitled to judgment as a matter of law.

¶ 14 Finally we cannot agree that Hardy's claim against Bezdicek, even if he was acting outside the scope of his employment, may not be pursued because she did not file her suit in time under the Act. Bezdicek argued Hardy's failure to comply with the Act extinguished her right to sue him, even if he was acting outside the scope of his employment, citing *Wirtz v. Glanz,* 1996 OK CIV APP 125, 932 P.2d 540.

¶ 15 In *Wirtz,* another division of the Oklahoma Court of Civil Appeals held that individuals making tort claims only against government employees who were alleged to be acting outside the scope of their employment must still comply with the notice requirements of the Act. In support of its conclusion, the Court in *Wirtz* cited language found in 51 O.S.1991 § 153(B) stating that the section substitutes the liability provided by the Act by the state or political subdivision "in place of all other liability of the state, a political subdivision or employee at common law or otherwise." Though mentioning the portions of § 163(A) and 51 O.S.Supp. 1995 § 162(A)(1) which include the words

"acting within the scope of employment," the Court's analysis emphasized instead the portion of § 153 describing the liability under the Act as "exclusive."

¶ 16 The only possible support for the concept that an individual suing a government employee for acts outside the scope of employment must still comply with the Act is in § 153(B). Both § 163(A) and § 162(A)(1) are expressly limited to situations where the employee is "acting within the scope of employment." However, the literal language of § 153(B) does not provide for proceeding under the Act to allow the political subdivision to investigate the claim, as suggested by *Wirtz.* Rather, it substitutes the liability of the political subdivision under the Act for that of the employee.

¶ 17 Unless § 153(B) is limited to situations where the employee is acting within the scope of employment, any person who meets the Act's definition of "employee" has no liability for their tortious acts, leading to the absurd result that the Legislature has forever insulated government employees who act outside the scope of their employment, *even if their acts are malicious, corrupt or fraudulent,* from liability for their actions. Unless we interpret the Act to include a requirement that an employee be acting in the scope of employment in order to take advantage of its protection, the Legislature has allowed individuals injured by the torts of government employees acting in the scope of their employment to secure compensation from the state or the political subdivision but has denied individuals injured by the malicious, corrupt or fraudulent acts of government employees not only the right to receive compensation from the state or political subdivision but also the right to receive compensation from the employee as well.

■ ¶ 18 Faced with such an absurd result, we are not required to give literal application to the statutes' words and should give a reasonable interpretation in accordance with the general legislative purpose. See *Taylor v. Langley,* 188 Okl. 646, 112 P.2d 411

---

3. Because of the failure of any showing on these underlying fundamental factors we need not determine whether a showing that an employee

acted "recklessly" or "wilfully" under these circumstances removes the employee from the "scope of employment."

(1941). Section 153(B) does not apply when an employee's acts were outside the scope of his or her employment, and one suing an employee who has acted outside the scope of employment is not required to comply with the Act.

¶ 19 Based on the Act, Hardy can recover from Bezdicek individually only if he was acting outside the scope of his employment. The facts revealed by the evidentiary material in this record, and all reasonable inferences therefrom, are not consistent only with the conclusion that Bezdicek was acting within the scope of his employment at the time of the accident, and Hardy's claim for acts outside the scope of his employment is not subject to the Act.

## CONCLUSION

¶ 20 Hardy sued UCO too late to recover on her claim, and UCO's judgment is affirmed. Questions of fact remain concerning Bezdicek's liability to Hardy for acts allegedly outside the scope of his employment. Bezdicek's judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

HANSEN, P.J., concurs in part II, dissents to part I;

JONES, C.J., concurring in part I, dissenting to part II:

I would follow *Wirtz v. Glanz.*

