**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DELIA BERGLUND and
DARLENE VASQUEZ,

    Plaintiffs - Appellants,

v.

POTTAWATOMIE COUNTY
BOARD OF COUNTY
COMMISSIONERS; KURT SHIREY,
Sheriff of Pottawatomie County,
Oklahoma; DEPUTY SWEARINGEN;
DEPUTY RODRIGUEZ,

    Defendants - Appellees.

No. 09-6000
(D.C. No. CV-06-672-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BRISCOE**, and **HOLMES**, Circuit Judges.

Plaintiffs-Appellants Delia Berglund and her daughter Darlene Vasquez

("Plaintiffs") appeal the district court's grant of summary judgment for

---

    [*]    This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1. After examining the briefs and the appellate record, this three-judge panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore ordered submitted without oral argument.

Defendants-Appellees Board of County Commissioners of Pottawatomie County, Pottawatomie County Sheriff Kurt Shirey, Pottawatomie County Sheriff's Deputy David Swearingen, and Pottawatomie County Sheriff's Deputy Anthony Rodriguez ("Defendants") on their 42 U.S.C. § 1983 civil rights and state-law tort claims.[1]  We exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM** the judgment of the district court.

## BACKGROUND[2]

On October 13, 2004, James Brand, the police chief of the Town of Asher, went to the residence that Plaintiffs and other family members shared in an effort to locate Ms. Vasquez.  When Chief Brand arrived, Ms. Berglund was outside the residence; Chief Brand asked Ms. Berglund about the location of her daughter.

---

[1]  Although Plaintiffs' notice of appeal indicates that they additionally are appealing the district court's denial of their Fed. R. Civ. P. 59(e) motion to amend or alter the judgment, they do not mention this argument in their opening brief.  "Arguments inadequately briefed in the opening brief are waived . . . ." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).  Even assuming the argument was preserved, however, having reviewed the motion, related filings, and the district court's order, it is clear that the district court's denial of this motion—which contended only that the district court's judgment was incorrect based on Plaintiffs' previous arguments—was not an abuse of discretion.  *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000) (noting that such a motion should be granted only to present newly discovered evidence or correct manifest errors of law).

[2]  As we are reviewing a grant of summary judgment for Defendants, we resolve all factual disputes and draw reasonable inferences therefrom in favor of Plaintiffs as the nonmoving parties.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1279 n.1 (10th Cir. 2007).

According to Chief Brand, Ms. Berglund reacted angrily and would not cooperate with Chief Brand's questioning. Chief Brand attempted to restrain and handcuff Ms. Berglund, but he was unsuccessful; she then quickly walked into the residence. Ms. Berglund claimed that her neck was injured as a result of her encounter with Chief Brand. After Ms. Berglund was inside the residence, Chief Brand called the Pottawatomie County Sheriff's office to request backup assistance. Ms. Berglund separately called the sheriff's office to request ambulance assistance.

Deputies Swearingen and Rodriguez reported to the scene and talked to Chief Brand. Neither Sheriff Shirey nor any members of the Board of County Commissioners were present or took part in the events at the residence. Upon their arrival at the scene, the deputies approached the residence and asked Ms. Berglund to come outside. Ms. Berglund told them to come inside if they wanted to talk to her. Ms. Vasquez was inside the house during these events, and she saw her stepfather—Ms. Berglund's husband—open the door and allow the deputies to enter. The deputies, who did not have a warrant, entered the residence.

After entering the residence, Deputy Swearingen took hold of Ms. Berglund's arm and pulled it behind her back. Still holding her arm, he and Deputy Rodriguez escorted Ms. Berglund out of the house and into Chief Brand's car. The deputies did not display or use handcuffs, and she testified that Deputy Rodriguez did not touch her at any time. The deputies did not curse at Ms.

-3-

Berglund, threaten her, or brandish or use any weapons. When Ms. Berglund was removed from the residence, Ms. Vasquez, who was standing in the open doorway, became upset and told the deputies that they should take her instead. Although Chief Brand then grabbed Ms. Vasquez and put her in his patrol car, Ms. Vasquez does not allege that the deputies touched, threatened, or frightened her at any point. After taking Ms. Berglund to the patrol car, neither deputy had any further contact with Plaintiffs. Chief Brand ultimately arrested both Plaintiffs for breaching the peace.[3]

## STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3059 (U.S. Oct. 5, 2009) (No. 09-87). "In exercising *de novo* review we afford no deference to the district court's interpretation of state law." *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 727 (10th Cir. 1991). A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and

---

[3]     At the time the district court issued its summary judgment order, Plaintiffs also had claims pending against Chief Brand and the Town of Asher, who did not file for summary judgment. Plaintiffs then settled their claims against these two defendants, and they are not parties to this appeal. After all claims against those two defendants were dismissed with prejudice, the district court entered final judgment for Defendants-Appellants, and Plaintiffs then filed their notice of appeal.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On Plaintiffs' § 1983 claims against the deputies, the district court granted the deputies' motion for summary judgment based on qualified immunity. Our review of summary judgment orders deciding qualified immunity questions differs from our review of other summary judgment decisions. *Martinez*, 563 F.3d at 1088. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[4] *Id.* (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 129 S. Ct. at 816.

Plaintiffs' argument for reversal is based upon their contention that genuine issues of material fact remain, and thus summary judgment is inappropriate. However, because we are reviewing the district court's summary judgment order as it pertains to the issue of qualified immunity, Plaintiffs' focus is misplaced. It assumes the applicability of the analytic summary judgment approach typically

---

[4] The *Pearson* Court announced that courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). As explained *infra*, Defendants did not violate Plaintiffs' constitutional rights. Thus, we need not address whether any such rights were clearly established. *See Martinez*, 563 F.3d at 1088.

used *outside* of the qualified immunity context.  The Supreme Court has instructed that when we make our initial qualified immunity inquiry, we "decide whether the facts *that a plaintiff has alleged or shown* make out a violation of a constitutional right."  *Id.* at 815-16 (emphasis added) (internal citations omitted); *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that generally in the qualified immunity context in addressing the legal inquiry "we accept the facts as the plaintiff alleges them").

It is only *if* and *when* the plaintiff succeeds in making this twofold showing—i.e., satisfies this "heavy two-part burden" of demonstrating that the defendant is *not* entitled to qualified immunity—that the burden shifts to the defendant to make the usual summary judgment showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law.  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001); *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Before it is established that the plaintiff has met his or her burden, factual disputes generally are not relevant, as all facts are viewed in the light most favorable to the plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("When [a case is decided on summary judgment and there have not yet been factual findings by a judge or jury], courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion.  In qualified immunity cases, this usually means adopting . . . the plaintiff's version

-6-

of the facts." (second alteration in original) (citation and internal quotation marks omitted)); *see also Goddard v. Urrea*, 847 F.2d 765, 770 (11th Cir. 1988) (Johnson, J., dissenting) (observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts"); *cf. Gallegos v. City & County of Denver*, 984 F.2d 358, 362 (10th Cir. 1993) (rejecting the district court's approach of essentially "requiring the defendants to go to trial before determining whether or not they are entitled to qualified immunity").

## DISCUSSION

### I. Federal Claims

Plaintiffs argue that the deputies' actions constituted unlawful entry, unlawful search, unlawful seizure or arrest, and excessive force in violation of the Fourth Amendment.[5] We address each of these contentions in turn.

Regarding any unlawful warrantless entry by the deputies, "[t]he Fourth Amendment generally prohibits the warrantless entry of a person's home, whether

---

[5]     Although Plaintiffs' brief also mentions alleged Fourteenth Amendment violations by the deputies, their only reference to the Fourteenth Amendment is in connection with their specific allegations implicating their Fourth Amendment rights. Such claims are properly considered under the Fourth Amendment rather than under the more general substantive due process analysis of the Fourteenth Amendment. *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007). "The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment" in the context of the initial stages of a criminal proceeding. *Id.*

to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (internal citations omitted); *see Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions."). We examine the totality of the circumstances to determine whether consent was voluntary or "the product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). In making that determination, we consider whether certain circumstances were present:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects . . .; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public.

*United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004) (ellipsis in original) (internal quotation marks omitted).

As is clear from the fact scenario outlined above, none of these factors was present when the deputies *entered* Plaintiffs' residence save the fact that several officers were at the scene. Although Plaintiffs argue that any suggestion by Ms.

-8-

Berglund that the deputies come inside the house if they wanted to talk to her was an invitation only to talk to her, not to actually enter the house, the deputies' conduct is to be viewed objectively. *See, e.g.*, *Brigham City*, 547 U.S. at 404. There is nothing in the record to suggest that the deputies reasonably should have believed that Ms. Berglund's consent was limited in this way. Moreover, the deputies also had the consent of "a third party who possesse[d] common authority over the premises," *Rodriguez*, 497 U.S. at 181, as Ms. Berglund's husband, who lived at the house, opened the door for the deputies. Given the totality of the circumstances, a reasonable officer would have believed he or she had consent to enter the residence. Thus, the deputies' entrance into the house did not constitute a Fourth Amendment violation under the circumstances taken most favorably to Plaintiffs.

Plaintiffs also appear to assert that the deputies unlawfully searched the residence without a warrant. Plaintiffs have offered no evidence, however, to support a claim that the deputies conducted any search of the premises or of their persons. Thus, Plaintiffs have not carried their burden; specifically, they have not established the violation of a constitutional right, and the deputies therefore are entitled to qualified immunity on this claim as well.

Next, Plaintiffs argue that the deputies unlawfully arrested them without a warrant or probable cause.

A warrantless arrest is permissible when an officer has

probable cause to believe that a person committed a crime. An arrest is distinguished by the involuntary, highly intrusive nature of the encounter. [T]he use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest. Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (en banc) (alteration in original) (citations and internal quotation marks omitted).

As explained above, after failing in his attempt to restrain Ms. Berglund, Chief Brand requested backup assistance rather than pursuing Ms. Berglund into the house. When the deputies arrived, they spoke to Chief Brand before approaching the house and asking Ms. Berglund to come outside. The deputies challenge the assertion that their conduct with regard to Ms. Berglund amounted to an arrest. *See* Aplee. Br. at 13 ("Because the deputies did not threaten Plaintiffs, draw their weapons, or otherwise use unnecessary force against Plaintiffs, their actions simply did not constitute an arrest."). In any event, they argue that the information provided to them by Chief Brand provided probable cause for them to believe that Ms. Berglund had committed a crime and, therefore, grounds to arrest her. In other words, they assert that they reasonably relied on "facts and circumstances," as well as "reasonably trustworthy information" obtained from Chief Brand, in determining that probable cause

existed to arrest Ms. Berglund. *Cortez*, 478 F.3d at 1116; *cf. Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) ("Police work often requires officers to rely on the observations, statements, and conclusions of their fellow officers. An officer who is called to the scene . . . is not required to reevaluate the arresting officer's probable cause determination . . . .").

Even viewing the facts in the light most favorable to Plaintiffs, and further assuming that the seizure constituted an arrest rather than a mere investigative detention, Plaintiffs' unconstitutional arrest claim fails. Plaintiffs offer nothing specific to refute the deputies' contention that they possessed sufficient information to give rise to probable cause beyond implying that Chief Brand supplied false or unreliable information to the deputies. Even if the record does not establish precisely what Chief Brand said to the deputies, and even if the information provided by Chief Brand ultimately turned out to be untrue, however, this would not compel a conclusion that the deputies were unreasonable in relying upon that information at the time it was conveyed to them. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity" where the arrestee seeks to hold the officials liable under § 1983. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[L]aw enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . .

-11-

in such cases those officials . . . should not be held personally liable."). Furthermore, it is undisputed that the deputies were aware of, and responding to, Chief Brand's request for backup assistance, after he failed to restrain and handcuff Ms. Berglund.

Plaintiffs have offered no evidence to indicate that the deputies unreasonably relied on Chief Brand's information or to suggest that the deputies had reason to doubt Chief Brand. "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120. On these facts, it is clear that a reasonable officer could have believed that probable cause existed to arrest Ms. Berglund. Thus, the deputies are entitled to qualified immunity on this claim.

Regarding Ms. Vasquez, the record establishes that neither of the deputies ever seized, detained, or arrested her. Ms. Vasquez, however, appears to be arguing that the deputies participated in her ultimate arrest by Chief Brand because when they walked Ms. Berglund out of the house, Ms. Vasquez followed them to the door where Chief Brand then grabbed her. She testified that "the only thing that [the deputies] did was try to get my attention so that, I guess, [Chief Brand] can get me and handcuff me and take me to jail." Aplt. App. at 183. This speculation does not amount to evidence of the deputies' personal participation in the alleged violation of Ms. Vasquez's rights—an essential element of a § 1983

-12-

claim. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Even assuming that the deputies' conduct could be construed as assisting Chief Brand in arresting Ms. Vasquez, as discussed above the deputies were relying on Chief Brand's information regarding the situation. Plaintiffs offer no evidence to suggest that such reliance was unreasonable. Thus, none of the actions taken by the deputies amounts to a violation of Ms. Vasquez's Fourth Amendment rights.

Finally, Plaintiffs argue that the deputies are not entitled to qualified immunity on their excessive force claim. An officer using force in the course of a seizure of a citizen is entitled to qualified immunity where clearly established law does not show that the level of force violated the Fourth Amendment. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). The precise question asked in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "We assess objective reasonableness based on whether the totality of the circumstances justified the use of force, and pay careful attention to the facts and circumstances of the particular case." *Estate of Larsen*, 511 F.3d at 1260 (internal quotation marks omitted). A plaintiff must demonstrate that the amount of force used was "sufficiently egregious to be of constitutional dimensions." *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 407 (10th Cir. 1990) (per curiam). The extent of the injury inflicted by any use of

-13-

force is additionally relevant in evaluating an excessive force claim. *Id.*

Here, the amount of force used by the deputies in effecting Ms. Berglund's arrest was minimal and reasonable under the circumstances. The allegation of excessive force relates to only Deputy Swearingen's action in pulling and holding Ms. Berglund's arm behind her back. Although Ms. Berglund was hospitalized briefly that night for elevated blood pressure, and she claims that the examination at the hospital revealed contusions on her neck and wrist, Plaintiffs have not pointed to any evidence in the record of a specific injury arising from Deputy Swearingen's actions.

The actions of Deputy Swearingen upon arriving at the scene and after consulting with Chief Brand were not objectively unreasonable. Further, the deputies did not display weapons, threaten, or shout at Plaintiffs. Ms. Berglund stated that they seemed "very nice" to her. Aplt. App. at 116. Accordingly, the deputies' actions did not violate Plaintiffs' constitutional rights, as these facts, taken in the light most favorable to Plaintiffs, are insufficient to present a Fourth Amendment violation.

Plaintiffs have not demonstrated a violation of a constitutional right and therefore have not met their burden in opposing summary judgment on this claim. Accordingly, our analysis of this issue ends with our determination that there was no constitutional violation. *See Martinez*, 563 F.3d at 1088. The deputies are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims.

-14-

## II. State-law Claims

Plaintiffs also assert claims under Oklahoma law against certain Defendants arising from the allegedly tortious conduct of the deputies. More specifically, they allege that the deputies committed acts of trespass or unlawful entry, assault and battery, and unlawful or false arrest. For the following reasons, we conclude that the district court properly granted summary judgment on these claims.

### A. *Claims Against the Deputies*

Generally speaking, pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), the state, its political subdivisions, and their employees are immune from liability for acts of employees taken within the scope of their employment. *See* Okla. Stat. tit. 51, §§ 152.1(A), 153, 163(C). The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties" of his or her employment. *Id.* § 152(11). At the commencement of this action, Plaintiffs brought state tort claims against the deputies, seeking to hold them individually liable for their tortious conduct, if they acted outside of the scope of their employment. Aplt. App. at 20 ("That the defendants, **JAMES BRAND AND JOHN DOE(S)**, are individually liable for their torts committed *outside of their scope of employment*."). Based on the issues presented in their Opening Brief and their arguments on appeal, Plaintiffs evince no signs of pursuing on appeal state-law relief against the deputies individually for their allegedly tortious conduct but rather focus on the alleged liability of

-15-

Sheriff Shirey and the Board for this allegedly tortious conduct. *See, e.g.*, Aplt. Opening Br. at 5 (noting appellate issue as being "[w]hether or not the Court correctly ruled on issues of State Law, more particularly[,] whether or not *the Sheriff* could be sued for the acts of his deputies" (emphasis added)); *id.* at 9 ("Plaintiffs' claim against the individual deputies was for '*Civil Rights Violation*' of the arrest in violation of the Fourth Amendment requirements."); *id.* at 45 (noting in Plaintiffs' "Proposition 5" that the Board is not entitled to summary judgment on the state-law claims based on the allegedly tortious conduct of the deputies).

Indeed, Plaintiffs have conceded that the deputies were acting within the scope of their employment within the meaning of the GTCA. *See id.* at 47 ("In our case, the parties admit that the officers were acting within the scope of their employment, as defined by the act."); Aplt. Reply Br. at 17 ("[A]t the time of the arrest of the Plaintiffs the Defendant Deputies were acting within the course and scope of their employment . . . ."). This concession alone would prevent Plaintiffs from securing state-law relief against the deputies individually under the GTCA for their allegedly tortious conduct. *See* Okla. Stat. tit. 51, § 153(B) ("The liability of the state or political subdivision under this act shall be exclusive and *in place of all other liability* of the state, a political subdivision, or *employee* at common law or otherwise." (emphasis added)); *Hardy v. Bezdicek*, 987 P.2d 426, 429 (Okla. Civ. App. 1999) (noting that § 153(B) "substitutes the

liability of the political subdivision under the Act for that of the employee" but that it is "limited to situations where the employee is acting within the scope of employment"); *see also* Okla. Stat. tit. 51, § 163(C) (noting the proper entity to name in a GTCA suit and stating that "[i]n no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant"); *Carswell v. Okla. State Univ.*, 995 P.2d 1118, 1123 (Okla. 1999) ("Employees, other than resident physicians and interns, acting within the scope of employment may not be named as defendants in an action based on the Tort Claims Act."); *cf. Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 540 (Okla. 2003) ("The GTCA, as a whole, is concerned with liability of the State and governmental entities, not individuals acting *outside* the scope of their employment." (emphasis added)). Therefore, we uphold the district court's judgment on Plaintiffs' state-law claims insofar as they contemplate relief against the deputies individually.[6]

### B.    Claims Against Sheriff Shirey

Although Plaintiffs concede on appeal that any claims brought under the GTCA are not properly brought against Sheriff Shirey, *see* Okla. Stat. tit. 51, §

---

[6]    Even if Plaintiffs were to contend, despite the clear signs of abandonment evinced by their filings, that they intended to pursue state-law relief against the deputies individually, the GTCA's provisions would not be their only obstacle. More fundamentally, as noted below, the deputies simply did not commit the allegedly tortious acts.

163(C), they continue to argue that Sheriff Shirey is liable pursuant to Okla. Stat. tit. 19, § 547, for certain torts committed by the deputies in the scope of their employment. Section 547(A) provides in relevant part that "[t]he sheriff shall be responsible for the official acts of the undersheriff and deputy sheriffs." Although the GTCA provides the "exclusive remedy against a governmental entity" in tort, *Franks v. Union City Pub. Sch.*, 943 P.2d 611, 613 (Okla. 1997), Plaintiffs contend that a theory of liability under § 547 has not been abrogated by the exclusive remedy of the GTCA. It is unnecessary to determine the legal question of whether Sheriff Shirey could be found liable for acts of his deputies under § 547—*viz.*, we need not decide whether under Oklahoma law § 547 provides a remedy for plaintiffs like these in a tort action against an Oklahoma government official based upon the allegedly tortious conduct of his or her subordinates. That is because we conclude that the deputies simply did not commit the allegedly tortious conduct upon which any purported § 547 liability of Sheriff Shirey would rest.

First, regarding Plaintiffs' claim that the deputies' entry into the house constituted trespass or unlawful entry, under Oklahoma law, a trespass is "'an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession.'" *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001) (emphasis omitted) (quoting *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998)). Thus, "a trespasser is one who enters upon

-18-

the property of another without any right, lawful authority, *or express or implied invitation, permission*, or license . . . merely for his own purposes, pleasure, or convenience, or out of curiosity." *Williamson*, 956 P.2d at 862 (emphasis added). As explained above, the undisputed facts are that the deputies entered the house only following the invitation of Ms. Berglund and that Ms. Berglund's husband opened the door to allow them entry. Therefore, the deputies could not be found liable for trespass.

Next, Plaintiffs assert that although it was Chief Brand who formally placed them under arrest, the deputies' conduct in escorting them to the police car constituted a false arrest. Under Oklahoma law, a tort claim for false arrest arises from the wrongful detention of a person by an individual acting under the authority of law. *See McGlone v. Landreth*, 195 P.2d 268, 271 (Okla. 1948), *overruled in part on other grounds by Parker v. Washington*, 421 P.2d 861 (Okla. 1966); *cf. Wallace v. Kato*, 549 U.S. 384, 389 (2007) (noting that the constitutional tort of false arrest/false imprisonment stems from unlawful "detention without legal process" (emphasis omitted)). "[F]alse arrest is the unlawful restraint of an individual against his will," and the plaintiff "has the burden of proving lack of probable cause for bringing a criminal action against him." *DeLong v. State ex rel. Okla. Dep't of Pub. Safety*, 956 P.2d 937, 938 (Okla. Civ. App. 1998) (internal quotation marks omitted). In other words, if a plaintiff cannot establish a lack of probable cause, his or her false arrest claim

must fail.[7] Even assuming that the encounter rose to the level of a "detention," as that term is understood in Oklahoma's law of false arrest, it is clear from the established facts that Plaintiffs cannot meet their burden of proving that the deputies lacked probable cause for the same reasons outlined above in connection with their § 1983 claims. The deputies are entitled to judgment on this claim.

Finally, Plaintiffs cannot prevail on their state-law claims of assault and battery. The common law of Oklahoma with respect to the torts of assault and battery references the definitions in the Restatement (Second) of Torts. *See*

---

[7] In the interest of clarity, we note that Oklahoma has established a statutory regime that specifically controls the circumstances under which liability may be imposed on merchants for detaining purported shoppers for suspicion of theft with regard to the related but distinct claim of false imprisonment. *See* Okla. Stat. tit. 22, § 1343 (noting, *inter alia*, that a merchant may detain a purported shopper when the merchant "has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money"); *Roberts v. Goodner's Wholesale Foods, Inc.*, 50 P.3d 1149, 1151 n.3 (Okla. Civ. App. 2002) (noting that "[a]lthough false arrest and false imprisonment are often used interchangeably," they are distinct torts). That statutory scheme sets out circumstances under which probable cause may be conclusively presumed and creates a statutory defense for merchants in which probable cause "represents but one element of the three-part test for invocation of the statutory defense against wrongful detention." *Walters v. J.C. Penney Co.*, 82 P.3d 578, 583 n.21 (2003); *see* Okla. Stat. tit. 22, § 1344 (noting that "[a]ny person concealing unpurchased merchandise . . . shall be presumed to have so concealed such merchandise with the intention of committing a wrongful taking of such merchandise" and further providing that such concealment "shall be conclusive evidence of reasonable grounds and probable cause for the detention in *[1] a reasonable manner and [2] for a reasonable length of time, of such person*" (emphasis added)). That statutory scheme is clearly inapposite here (in a case that involves law enforcement and not merchants), and its treatment of probable cause has no bearing on our analysis of Plaintiffs' false arrest claim.

-20-

*Brown v. Ford*, 905 P.2d 223, 229 & n.34 (Okla. 1995). An actor is liable for assault if he or she "acts intending to cause a harmful or offensive contact, . . . or an imminent apprehension of such a contact," and "the other [person] is thereby put in such imminent apprehension." *Id.* at 229 n.34. An actor is liable for battery if he or she "acts intending to cause a harmful or offensive contact, . . . or an imminent apprehension of such a contact," and "a harmful contact . . . results." *Id.*

Regarding Ms. Vasquez, her own testimony establishes that neither deputy ever touched her, let alone physically harmed her; in addition, there is no evidence to support a claim that either deputy took action to contact her or place her in apprehension of contact. Similarly, there is no evidence that arguably supports a claim that Deputy Rodriguez assaulted or battered Ms. Berglund. Regarding Deputy Swearingen's actions toward Ms. Berglund, Plaintiffs presented no evidence that Deputy Swearingen acted with the intent to harm Ms. Berglund, or that he threatened her with physical harm, such that an assault or battery claim would lie. Ms. Berglund's own testimony was that no threats were made by the deputies and that both deputies seemed "very nice" to her. Aplt. App. at 116. As discussed above in rejecting Plaintiffs' excessive force claim, Ms. Berglund cannot show that she suffered any harmful contact from Deputy Swearingen's actions beyond her unsupported assertion of contusions on her neck and wrist. Plaintiffs cannot prevail on their claims against the deputies.

Accordingly, there is no actionable wrongdoing under state law by the deputies upon which to base any conceivable liability of Sheriff Shirey.

### C.   Claims Against the Board of County Commissioners

Plaintiffs assert a claim under the GTCA against the Board, alleging that it is liable for the allegedly tortious acts committed by the deputies.  Under the GTCA, a county may be liable for torts committed by its employees while acting within the scope of their employment.  Okla. Stat. tit. 51, §§ 153, 152(10)(c); *DeCorte v. Robinson*, 969 P.2d 358, 361 (Okla. 1998).  As previously explained, however, the deputies did not engage in any tortious conduct.  Thus, there is no conduct for which the Board could be held liable; it is entitled to judgment on this claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

Entered for the Court

Jerome A. Holmes
Circuit Judge